[Civ. No. 21487. First Dist., Div. Three. July 30, 1965.]

BRIAN HEATH et al., Plaintiffs and Appellants, v. E. N. KETTENHOFEN, Defendant and Appellant.

E. N. KETTENHOFEN, Plaintiff and Appellant, v. BRIAN HEATH et al., Defendants and Appellants.

Hawkins & Hawkins and Herbert G. Hawkins for Appellants Heath et al.

Robert E. Reeser for Appellant Kettenhofen.

SALSMAN, J.—Plaintiffs Heath and defendant Kettenhofen are owners of adjacent parcels of land. Each party has filed an action against the other. Their dispute concerns the existence, extent and proper use of an easement across the northerly 40 feet of defendant's land. Plaintiffs' action sought declaratory relief, to quiet title and an injunction. Defendant's action sought reformation of the deed by which the common grantor of the parties granted the disputed easement to plaintiffs. Although each party is both a plaintiff and a defendant, for convenience the Heaths will hereafter be referred to as plaintiffs and Kettenhofen as defendant, unless otherwise noted.

The plaintiffs purchased their property from the common grantor, a Mr. Wilson, in 1953, and defendant purchased his property in 1958. Wilson's deed to plaintiffs contained the grant of an easement, 40 feet in width, "for roadway and utilities" over a portion of the land later granted by Wilson to defendant. The defendant has attached to his brief a diagram showing the disputed easement and its relationship to the property of the parties. A copy of the diagram* is attached to this opinion as an exhibit. It corresponds to the testimony taken at the trial and reflected in the record before us on this appeal.

In 1960 plaintiffs filed an action against defendant to prevent the erection by defendant of a fence along the common boundary, and to enjoin defendant from interfering with plaintiffs' use and enjoyment of the easement. Later, the defendant Kettenhofen filed an action against plaintiffs Heath, seeking reformation of their deed from Wilson, alleging that the scrivener of the deed had made an error by including a greater easement than that intended by the grantor. The actions were consolidated for trial.

At trial there was evidence that in 1953 when plaintiffs purchased their property from Wilson, a building was located on the southeastern portion of the property. This building had formerly been used as a firehouse. It had a large swinging door that faced to the south, opening on to the easement. This large door contained a smaller door, used by personnel to gain access to the firehouse without the necessity of opening the larger door. A fence, located approximately along the common boundary line, ran east from the southwestern corner of plaintiffs' property to a point about 15 feet west of the firehouse.

The evidence is in some conflict concerning the grant of plaintiffs' easement. The grantor Wilson testified that the only easement he ever discussed was one that would give plaintiffs access to the railroad to the west. Brian Heath acknowledged that he had not discussed the disputed ease-main entrance to the firehouse gave on to the easement he assumed that it "went as part of the land use that we were buying at the time." The easement for access to the railroad was discussed by the parties, but Brian Heath stated that his impression was that this discussion related to the 55-foot ment with Wilson. He testified, in effect, that because the

---

*See following page for diagram.

40' Easement

20' Easement Northwestern Pacific Railroad

40' Easement

195.31

131

HEATH'S PROPERTY

131

Gate 5 Road

195.139

250.139

40'

40' EASEMENT

KETTENHOFEN'S PROPERTY

N

strip between the westerly line of plaintiffs' property and the railroad.

The deed describing the disputed easement was prepared by an escrow officer of the title company handling the transaction. Wilson testified that he relied upon the title company to take care of such matters. After the deed was signed and delivered there was no further discussion of the matter between Wilson and plaintiffs.

When defendant purchased his property in 1958 he was aware of plaintiffs' easement.

In 1959 plaintiffs demolished the old firehouse on their property, and constructed a new commercial building. This building faces south toward the easement. Plaintiffs have constructed a driveway that leads from the northern edge of the easement and runs along the west side of their building. After construction of plaintiffs' building, defendant erected a steel wire fence along the common boundary line, leaving an opening for plaintiffs' driveway on the west side of the building, but no opening for access to the easement from the front entrance of the building. This fence had been removed at time of trial.

The immediate cause of the litigation between the parties arose first from a dispute over the use of the easement for the parking of vehicles, and from defendant's insistence upon the right to run a fence along the common boundary line, fencing off the easement and restricting plaintiffs' access to it.

After trial, the court found that plaintiffs' easement was for "roadway and utilities over a strip of land 40 feet wide"; that after suit was filed defendant had built a fence along the common boundary line but had removed the fence before trial; that defendant had erected a wooden barricade down the center of the easement; that defendant had parked vehicles in the easement for all day storage, and that such parking interfered with the rights of plaintiffs to the use of the easement.

The judgment enjoined defendant from the erection of a fence along the common boundary and declared that the rights of the parties in the easement for roadway purposes were "coexisting and equal" and that each party was entitled to use the easement for such transitory parking as would not interfere with the rights of the other party. In an effort to regulate the use of the easement by each party the

judgment further provided that plaintiffs should have exclusive control of a strip 10 feet in width along the northerly side of the easement "for the purposes of access to parking places now provided on their property", and for such transitory parking as might remain available for plaintiffs and plaintiffs' invitees. Similarly, the defendant was given exclusive control of a strip 10 feet in width along the southerly side of the easement for parking purposes. The defendant was given the further right to erect a barrier "no closer than 30 feet from the northerly line of the easement and parallel thereto . . ." for the purpose of delineating his parking area. Finally, the court reserved jurisdiction for the purpose of altering its decree if necessary to settle further disputes or in the event of changed circumstances.

In defendant's action for reformation the court simply declared that Kettenhofen take nothing, and that the findings of fact and conclusions of law in plaintiffs' action applied with equal force to Kettenhofen's action.

After entry of judgment, defendant moved to set it aside. His motion was denied.

Both parties appeal from the judgment. Defendant also appeals from the denial of his motion to set aside the judgment.

Before discussing the appeal on its merits it is necessary to notice some procedural issues raised by defendant. On appeal, plaintiffs contend only that they have a right to use the easement to its entire width, and that it was error to give defendant exclusive control of a 10-foot strip running the length of the easement, and to permit the defendant to erect a barricade to mark off his parking area. ■ Defendant argues that the judgment is inseparable and not appealable in part. (See *Kelly* v. *Sparling Water Co.*, 52 Cal.2d 628, 634 [343 P.2d 257].) Defendant's contention must be rejected. Plaintiffs have appealed from the entire judgment, and although they present a limited argument, no part of their appeal has been abandoned. Further, defendant has also appealed from the judgment in its entirety, and thus the whole controversy is before us for decision.

Defendant also urges that the judgment entered is an interlocutory one, and hence not appealable. This contention must also be rejected. The trial court effectively adjudicated the rights of the parties. The judgment declares that the rights of the parties ". . . in and to the property, the sub-

ject of the easement, for roadway purposes are coexisting and equal. . . .'' It is true that the trial court has reserved jurisdiction to approve or disapprove particular plans of the parties for enjoyment of the easement but nevertheless their basic rights have been determined. ■ Whether a decree in equity has effectively adjudicated the rights of the parties and is hence final and appealable depends upon the facts of the particular case. ■ Where, as here, no issue is left for future consideration except the fact of compliance with the terms of the decree, the decree is final. (See *Lyon* v. *Goss*, 19 Cal.2d 659, 669-670 [123 P.2d 11].) It necessarily follows that an appeal lies from such a decree. (Code Civ. Proc. § 963, subd. 1.)

Plaintiffs attack the judgment on two grounds. They first contend they have an absolute right to use the easement to the full extent of its width, free of any interference by the owner of the servient estate. Secondly, plaintiffs contend that it was error for the court to allow defendant the exclusive use of a 10-foot strip running the full length of the easement, and to permit the erection of a barricade to mark off a part of this area. We consider these contentions together, because the answer given is applicable to each.

■ It is a basic rule that the servient owner has the right to use his land for any purpose not inconsistent with the easement to which it is subject. (*Greiner* v. *Kirkpatrick*, 109 Cal.App.2d 798, 803 [241 P.2d 564].) ■ Moreover, ''a specification of width and location does not always determine the extent of the burden imposed upon the servient land.'' (*Pasadena* v. *California-Michigan etc. Co.*, 17 Cal.2d 576, 581 [110 P.2d 983, 133 A.L.R. 1186].) ■ Here the entire judgment must be read in the light of its fundamental holding that the rights of the parties in and to the easement, for roadway purposes, are coexisting and equal, and that these rights embrace as necessary incidents thereto the reasonable use of the easement by each party for such transitory parking as will not interfere with the rights of the other. When this is done, it is clear that no right of the plaintiffs is in any manner impaired. This appears from plaintiff Brian Heath's testimony concerning use of the easement. His testimony was, in effect, that if the north half of the easement was kept clear there would be no interference with plaintiffs' use. Thus, that portion of the judgment granting defendant the use of the southerly 10-foot strip of the easement, and permitting the erection of the barricade does not affect plaintiffs in the

enjoyment of their right to use the easement. Of course, whether plaintiffs' future reasonable use of the easement will require removal of the barricade erected by defendant is not presently known. But the court has reserved jurisdiction in the matter and if the present decree requires future modification, the court has ample authority to proceed.

Defendant's appeal from the judgment raises three questions. First, defendant challenges plaintiffs' claim to full lateral access to the easement from their property. Defendant cites and relies upon *Dolske* v. *Gormley,* 58 Cal.2d 513, 519 [25 Cal.Rptr. 270, 375 P.2d 174]. In *Dolske,* however, the trial court specifically found the fence constructed along the common boundary did not unreasonably interfere with use of the easement by the dominant owner. At page 520 the court said: ". . . the owner of the servient estate may construct a fence along the easement right of way so long as the fence is not placed so as to be inconsistent with the rights of the dominant owner." ■ Whether the fence, erected along the common boundary in the manner disclosed by the evidence, constituted an unreasonable interference with plaintiffs' easement presented a question of fact, to be resolved in the first instance by the trial court, whose determination is to be upheld on appeal if supported by substantial evidence. ■ Here the trial court has expressly found that the erection of the fence along the common boundary by the defendant would cause irreparable damage to plaintiffs. That finding is fully supported by the testimony of plaintiff Brian Heath, and other evidence received by the trial court, particularly the photographs showing the location and height of the fence and illustrating its effect upon access to plaintiffs' building.

■ Defendant next contends that, even if plaintiffs did initially have a right to full lateral access to the easement, the right has been lost. Defendant argues that grant of the easement is made in general terms, and when such an easement is granted, the use made of the easement fixes the limit of the right, and that the use cannot thereafter be changed against the objection of the servient tenement. (See *Winslow* v. *City of Vallejo,* 148 Cal. 723, 725 [84 P. 191, 113 Am.St. Rep. 349, 7 Ann.Cas. 851, 5 L.R.A. N.S. 851].) In support of this argument defendant points to the evidence showing that in 1953, when plaintiffs purchased the property, a portion of the common boundary was fenced, with access to the easement being from a point near the eastern end of the ease-

ment. Thus, says defendant, use of the easement from 1953 to 1959 fixes the limit of plaintiffs' right.

We cannot agree. The grant of plaintiffs' easement is specific. Its precise location is described and its exact width throughout its course is fixed. At the time the easement was granted, plaintiffs' grantor knew that they intended later to construct a commercial building on the property. The doors to the firehouse opened south on to the easement. Brian Heath's testimony discloses that he was aware of the fact that access to the easement could be had from the dominant tenement as well as from Gate 5 Road to the east. Upon these facts there is no justification for the assertion that plaintiffs' right to enter the easement is limited to access from the east, or that, if the right to enter from the dominant tenement did exist at time of plaintiffs' purchase, it had been lost by use of the east entrance between 1953 and 1959.

■■■ Defendant's objection to that portion of the judgment that grants plaintiffs exclusive control and use of a 10-foot strip along the northerly side of the easement is without merit. The sole purpose of this part of the judgment was to protect plaintiffs in their use of the easement. The court found that defendant's parking in that portion of the easement was an interference with plaintiffs' right to use the easement as a means of access to their property. Accordingly the court granted plaintiffs control of the 10-foot strip along the northerly edge of the easement, ". . . *for the purposes of access to parking places now provided on their property* and for such transitory parallel parking as may remain available for their licensees and invitees." (Italics ours.) The judgment does not deprive defendant of his remaining rights in the easement, as he argues. Plaintiffs concede in their brief that every incident of ownership not inconsistent with the easement and its enjoyment belongs to the defendant, as owner of the servient tenement. As we have noted, the trial court found that defendant's parking of vehicles in the easement was an interference with plaintiffs' right of access and framed its judgment in the manner best calculated to protect that right, as well as their right to use the easement as a roadway, to the extent authorized by the grant.

In defendant's action for reformation of Wilson's deed to plaintiffs, the trial court did not make specific findings of fact, although requested by defendant to do so. Specifically, the court was asked to find (1) whether the agreement between Wilson and plaintiffs was for an easement of access to

the railroad only, and (2) whether Wilson agreed to grant plaintiffs an easement for utilities and roadway purposes. In its findings the court merely declared that defendant should take nothing by his action and that the findings made in plaintiffs' action applied with equal force to that of defendant. In appealing from the adverse judgment in his action, defendant asserts that the judgment may not stand because there are no findings of fact made on material issues and that specific findings on such issues were requested. Finally, defendant challenges the sufficiency of the evidence to support the judgment in favor of plaintiffs.

 Although the specific findings requested by defendant in his action were not made, the trial court did make findings in plaintiffs' action which, reasonably construed, dispose of the issues raised in defendant's action. In plaintiffs' action the court found that ". . . plaintiffs have been the grantees and dominant tenants of an easement over said forty foot strip by virtue of a grant from said James C. Wilson . . . and that said grant of easement reads as follows: '. . . for roadway and utilities over a strip of land forty feet wide. . . .' " This finding effectively disposes of the issues raised in defendant's action for reformation because it resolves the conflicts in the evidence in favor of the plaintiffs, and validates their claim to a 40-foot easement for roadway and utility purposes. Having made this finding in plaintiffs' action for declaratory relief, the court could not later consistently find in defendant's action for reformation that the easement granted was merely for limited and occasional purpose of access to the railroad. Since the findings made by the court are entirely contrary to defendant's claim of a mutual mistake between plaintiffs and Wilson at the time the easement was granted, other findings were unnecessary. Moreover, on the record presented, reformation of the deed of Wilson granting the easement to plaintiffs would not have been proper. The evidence does not show any mutual mistake such as would justify reformation of the deed. At most, the evidence indicates that the parties did not have the same understanding with respect to the extent of the easement. Thus, if mistake was present, it was unilateral and not mutual. It is elementary that a court of equity has no power to make a new contract for the parties, nor can it reform an instrument according to the terms in which one of the parties understood it, unless it also appears

that the other party had the same understanding. (See *Bailard* v. *Marden*, 36 Cal.2d 703, 708-709 [227 P.2d 10], and authorities cited.)

The judgment is affirmed. The order denying defendant's motion to vacate the judgment is affirmed. Each party shall bear his own costs on appeal.

Draper, P. J., and Devine, J., concurred.