[No. B185326. Second Dist., Div. Four. May 22, 2007.]

BARRY BLACKMORE, Plaintiff and Respondent, v.
DONNA LISA POWELL et al., Defendants and Appellants.

COUNSEL

Cox, Castle & Nicholson, Stanley W. Lamport and James R. Repking for Defendants and Appellants.

The Dolan Law Firm and Peter Brown Dolan for Plaintiff and Respondent.

OPINION

MANELLA, J.—Respondent Barry Blackmore initiated an action against appellants Donna Lisa Powell and Susan Diana Schmitter for a declaration that he was entitled to build a garage on an easement appurtenant to his property, and for other relief, including a permanent injunction. Following trial, a judgment was entered in Blackmore's favor on his claims for declaratory and injunctive relief. On appeal, appellants contend the trial court erred in interpreting the easement to permit respondent to build a garage, and that the easement, so construed, contravenes the Subdivision Map Act (Gov. Code, § 66410 et seq.) (Map Act).[1] We reject these contentions and affirm.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

The underlying dispute concerns adjoining parcels of residential real property in Glendale. In December 1979, Richard Hunt, the owner of one of

---

[1] All further statutory citations are to the Government Code, unless otherwise indicated.

these parcels, executed a grant deed conveying an easement to the owners of the other parcel, Thomas and Barbara Young. According to the grant deed, the easement was for "parking and garage purposes" over a defined area on Hunt's property encompassing 6,138.29 square feet. The grant deed was recorded on December 11, 1979. In May 1998, appellants purchased the property formerly owned by Hunt. Respondent bought the property formerly owned by the Youngs in 2003, and later obtained a building permit from the City of Glendale to erect a two-car garage covering approximately 660 square feet—roughly 11 percent—of the easement.

On June 29, 2004, respondent filed a complaint alleging that appellants had prevented him from building a garage on the easement. The complaint sought declaratory relief, an injunction, and damages. Trial in the action was subsequently bifurcated.

On March 28, 2005, a bench trial occurred on respondent's claims for declaratory and injunctive relief. At trial, appellants conceded that the 1979 deed created an easement on their property, and they did not challenge appellant's entitlement to park vehicles on it. They contended that the deed did not accord appellant the right to build a garage, and that construing the easement to encompass this right would violate the Map Act.

The trial court heard testimony from appellant Powell and respondent, and the parties stipulated that there was no evidence that a permanent structure had previously been erected on the easement. Powell testified that appellants had received a title insurance policy disclosing the easement when they bought the property. Respondent testified that much of the easement was hilly, and that a portion of the easement would be excavated to provide a flat pad for the garage.

The trial court issued its statement of decision on June 6, 2005. Noting that there was "little dispute as to the facts involved," the trial court concluded that the 1979 deed, by its express terms, authorized respondent to build a garage on the easement; it further determined that respondent was entitled to exclusive use of the garage. It rejected appellants' contention that the easement, so construed, violated the Map Act, concluding that respondent's exclusive use of the garage did not constitute a subdivision of property within the meaning of the Act. The trial court awarded a judgment in respondent's favor on his claims for declaratory relief, and appellants noticed an appeal from this ruling.

On May 6, 2006, following a second bench trial on respondent's claim for damages, the trial court filed a judgment denying this claim and incorporating its prior judgment. Appellants also noticed an appeal from this judgment, and their two appeals were subsequently consolidated.

## DISCUSSION

Appellants challenge the trial court's rulings on two related grounds. First, they contend the trial court misinterpreted the rights accorded respondent under the grant deed. Second, they contend the trial court's determinations regarding the easement contravene the Map Act. As we explain below, both contentions are mistaken.[2]

### A. *Exclusive Rights Regarding the Garage*

Appellants contend that the trial court's interpretation of the grant deed awards respondent an ownership interest in their land, rather than an easement. The crux of their argument is that according respondent the right to build a garage on the easement for respondent's exclusive use amounts to awarding respondent ownership in fee simple (or its equivalent) of a portion of their property. We disagree.

■ Generally, easements are distinguished from estates in land such as ownership in fee, tenancy in common, joint tenancy, and leaseholds, which are forms of possession of land. (12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, §§ 9–10, 382, pp. 59–60, 446–447.) " 'An easement involves primarily the privilege of doing a certain act on, or to the detriment of, another's property.' [Citation.] An easement gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be *less* than the right of ownership. [Citation.]" (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1306 [54 Cal.Rptr.2d 284]; quoting *Wright v. Best* (1942) 19 Cal.2d 368, 381 [121 P.2d 702].) Thus, "[t]he owner of an easement is not the owner of the property, but merely the possessor of a 'right to use someone's land for a specified purpose . . . .' " (*Cody F. v. Falletti* (2001) 92 Cal.App.4th 1232, 1242 [112 Cal.Rptr.2d 593], quoting *Long Beach Unified Sch. Dist. v. Godwin Liv. Trust* (9th Cir. 1994) 32 F.3d 1364, 1368; see *Kazi v. State Farm Fire & Casualty Co.* (2001) 24 Cal.4th 871, 881 [103 Cal.Rptr.2d 1, 15 P.3d 223] [An easement "represents a limited privilege to use the land of another . . . , but does not create an interest in the land itself."].)

---

[2] We review the trial court's findings for the existence of substantial evidence. (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 562 [6 Cal.Rptr.3d 746].) To the extent that material facts are not in dispute, the rulings regarding the grant of the easement and the scope of the Map Act constitute determinations of law that we review de novo. (*van't Rood*, at p. 562; *San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528 [86 Cal.Rptr.2d 473].)

■ The easement here is appurtenant: it attaches to respondent's property, the so-called dominant tenement, and burdens appellants' property, the so-called servient tenement. (*Cushman v. Davis* (1978) 80 Cal.App.3d 731, 735 [145 Cal.Rptr. 791].) Because the 1979 grant deed created the easement, the burden imposed on appellants' property is determined by the terms of the deed. (*County of Sacramento v. Pacific Gas & Elec. Co.* (1987) 193 Cal.App.3d 300, 313 [238 Cal.Rptr. 305].) "Where the easement is founded upon a grant, as here, only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee." (*Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 579 [110 P.2d 983].) Appellants thus retain "every incident of ownership not inconsistent with the easement and the enjoyment of the same." (*Dierssen v. McCormack* (1938) 28 Cal.App.2d 164, 170 [82 P.2d 212].)

Nonetheless, appellants may not use their property "in a way that obstructs the normal use of the easement." (12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 412, p. 484.) "Whether a particular use by the servient owner of land subject to an easement is an unreasonable interference with the rights of the dominant owner is a question of fact for the trier of fact," whose findings are binding upon the appellate court if properly supported by the evidence. (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 703 [43 Cal.Rptr.2d 810].)

■ Here, the deed conveyed "[a]n easement for parking and garage purposes." "In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply. If the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired." (*Scruby v. Vintage Grapevine, Inc., supra,* 37 Cal.App.4th at p. 702.) As the trial court correctly observed, the term "garage," as used in the deed, means putting or storing a vehicle in a garage. (E.g., Webster's Third New Internat. Dict. (2002) p. 935 ["garage . . . \vt . . . / . . . : to keep or put in a garage"].) Because there was no evidence that a garage ever stood on the easement, the trial court properly concluded that the express language of the deed authorized respondent to build a garage.

The trial court further concluded that respondent was entitled to exclusive use of the garage as "a necessary incident" of the easement, reasoning that a shared garage would generate disputes about allocation of parking spaces, security, and maintenance costs. In view of the evidence presented at trial, we see no error in the determination that nonexclusive use of the garage would interfere unreasonably with respondent's rights. (*Scruby v. Vintage Grapevine, Inc., supra,* 37 Cal.App.4th at p. 703.)

 We recognize that in *Pasadena v. California-Michigan etc. Co.*, *supra*, 17 Cal.2d at pages 578–579, our Supreme Court remarked, in dictum, that an " 'exclusive easement' " is an unusual interest in land that "has been said to amount almost to a conveyance of the fee," and observed that "[n]o intention to convey such a complete interest can be imputed to the owner of the servient tenement in the absence of a clear indication of such an intention." In that case, no "serious claim" was presented that an exclusive easement had been conveyed. (*Ibid.*) Whether a so-called exclusive easement constitutes ownership in fee, rather than an easement, depends upon the circumstances of the case (*Otay Water Dist. v. Beckwith* (1991) 1 Cal.App.4th 1041, 1048 [3 Cal.Rptr.2d 223]), including the terms of any applicable conveyance (*Raab v. Casper* (1975) 51 Cal.App.3d 866, 876–877 [124 Cal.Rptr. 590]). Thus, a conveyance that " ' " 'purported to transfer to A an *unlimited* use or enjoyment of Blackacre . . . would be in effect a conveyance of ownership to A, not of an easement.' " ' [Citation.]" (*Raab v. Casper*, *supra*, 51 Cal.App.3d at p. 877.) In contrast, an easement incorporating a right of exclusive use may fall short of ownership in fee when the easement is restricted in scope. (*Otay Water Dist. v. Beckwith*, *supra*, 1 Cal.App.4th at p. 1048.)

 In our view, the easement, as construed by the trial court, does not rise to fee ownership because (1) the rights accorded respondent under the 1979 deed are circumscribed, and (2) the award of exclusive control over the garage—which will occupy only a small portion of the easement—is intended solely to protect these restricted rights. In *Heath v. Kettenhofen* (1965) 236 Cal.App.2d 197, 200 [45 Cal.Rptr. 778], the owner of a parcel of commercial property conveyed by grant deed a 40-foot-wide easement for " '[a] roadway and utilities' " to the owner of the adjoining parcel of commercial property. Thereafter, the grantor built a fence along his property line that blocked access to the easement. (*Id.* at p. 200.) The trial court found that the easement had been granted, in part, to facilitate parking on the dominant tenement, and awarded its owner as a "necessary incident" of the easement exclusive control over a 10-foot-wide strip within the easement for parking.[3] (*Id.* at pp. 202–204.) On appeal, the grantor objected to the award, arguing that it abrogated his rights over that portion of the easement. (*Id.* at p. 202.) The Court of Appeal rejected this contention, reasoning that the award of exclusive control was necessary to protect the easement holder's rights. (*Id.* at pp. 204, 206.) We reach the same conclusion here.

Appellants contend that the right to exclusive control over the garage is necessarily inconsistent with the grant of an easement. They rely on *Harrison v. Welch* (2004) 116 Cal.App.4th 1084 [11 Cal.Rptr.3d 92], *Kapner v.*

---

[3] The trial court also gave the grantor exclusive control over a different 10-foot-wide strip within the easement. (*Heath v. Kettenhofen*, *supra*, 236 Cal.App.2d at p. 203.)

*Meadowlark Ranch Assn.* (2004) 116 Cal.App.4th 1182 [11 Cal.Rptr.3d 138], *Mehdizadeh v. Mincer, supra,* 46 Cal.App.4th 1296, *Silacci .v. Abramson* (1996) 45 Cal.App.4th 558, 562–564 [53 Cal.Rptr.2d 37], *Mesnick v. Caton* (1986) 183 Cal.App.3d 1248, 1260–1262 [228 Cal.Rptr. 779], and *Raab v. Casper, supra,* 51 Cal.App.3d at pages 876–878. As we explain below, these cases address the acquisition of an exclusive easement by *prescription,* and thus are factually distinguishable.

The doctrine of easement by prescription, like the doctrine of adverse possession, permits a party to acquire rights regarding property through the party's conduct on the property. (12 Witkin, Summary of Cal. Law, *supra,* Real Property, § 401, p. 470.) Generally, "[t]he elements necessary for a prescriptive easement resemble those necessary for adverse possession, but the doctrines are not identical nor are their prerequisites interchangeable. A successful claimant by adverse possession, for instance, gains title to property. By contrast, the successful claimant of a prescriptive easement gains not title, but the right to make a specific use of someone else's property. [Citations.]" (*Mesnick v. Caton, supra,* 183 Cal.App.3d at p. 1261.)

In each case cited by appellants, a party who had not demonstrated a title to property through adverse possession contended that he or she had, instead, an exclusive prescriptive easement. In each case, the court rejected the contention, reasoning that the party could not properly acquire what was— under the circumstances—the equivalent of fee ownership, without satisfying the requirements of adverse possession. (*Harrison v. Welch, supra,* 116 Cal.App.4th at pp. 1090–1094; *Kapner v. Meadowlark Ranch Assn., supra,* 116 Cal.App.4th at pp. 1186–1187; *Mehdizadeh v. Mincer, supra,* 46 Cal.App.4th at pp. 1304–1308; *Silacci v. Abramson, supra,* 45 Cal.App.4th at pp. 562–564; *Mesnick v. Caton, supra,* 183 Cal.App.3d at pp. 1260–1262; *Raab v. Casper, supra,* 51 Cal.App.3d at pp. 876–878.) Unlike these cases, respondent's claim of an easement arises not from his conduct, but from the 1979 grant deed, which expressly accords him rights short of fee ownership.

Appellants also suggest that the right to erect or maintain a permanent structure is inconsistent with an easement created and held by private individuals. They argue that (1) Civil Code section 801, which enumerates 18 categories of easements, does not refer to permanent structures,[4] and (2) the trial court relied solely on case authority addressing permanent structures on

[4] Civil Code section 801 provides: "The following land burdens, or servitudes upon land, may be attached to other land as incidents or appurtenances, and are then called easements: [¶] 1. The right of pasture; [¶] 2. The right of fishing; [¶] 3. The right of taking game; [¶] 4. The right-of-way; [¶] 5. The right of taking water, wood, minerals, and other things; [¶] 6. The right of transacting business upon land; [¶] 7. The right of conducting lawful sports upon land; [¶] 8. The right of receiving air, light, or heat from or over, or discharging the same upon or over land; [¶] 9. The right of receiving water from or discharging the same upon land; [¶] 10. The

easements held by utilities, railroads, and other entities performing a public service. We are not persuaded.

■ As our Supreme Court explained in *Laux v. Freed* (1960) 53 Cal.2d 512, 521 [2 Cal.Rptr. 265, 348 P.2d 873], the list of easements in Civil Code section 801 is not exhaustive. Although no case squarely addresses the issue presented here, numerous California courts have concluded that a "private" easement—that is, an easement created and held by private parties—may encompass the right to maintain or use a permanent structure. (E.g., *Bradley v. Frazier Park Playgrounds* (1952) 110 Cal.App.2d 436, 442–443 [242 P.2d 958] [homeowners in residential development have equitable easement to use clubhouse and other recreational facilities built by developer]; *Dixon v. Eastown Realty Co.* (1951) 105 Cal.App.2d 260, 263 [233 P.2d 138] [bank holds easement for a portion of its garage that intrudes on adjoining site of apartment building]; *Dierssen v. McCormack*, *supra*, 28 Cal.App.2d at pp. 168–171 [conveyance by landowner creates easement held by adjoining landowner regarding irrigation ditch and water siphons].) Moreover, at least one out-of-state court has determined that a homeowner may acquire an easement by grant to maintain a garage that intrudes on an adjoining homeowner's property. (*Kell v. Oppenlander* (1998) 154 Or.App. 422, 424–428 [961 P.2d 861].) In short, neither the absence of permanent structure from the enumerated easements in Civil Code section 801 nor the fact that the easement in question is between private parties undermines the trial court's determination that the easement authorized respondent to erect a garage on a small portion of the property in question.

### B. *Map Act*

Appellants contend that the easement, as construed by the trial court, is void or unenforceable because it contravenes the Map Act. We disagree.

■ The Map Act "is 'the primary regulatory control' governing the subdivision of real property in California. [Citation.]" (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 996–997 [129 Cal.Rptr.2d 869, 62 P.3d 103].) It has three major goals: "to encourage orderly community development, to prevent undue burdens on the public, and to protect individual real estate buyers." (*van't Rood v. County of Santa Clara*, *supra*, 113 Cal.App.4th at

---

right of flooding land; [¶] 11. The right of having water flow without diminution or disturbance of any kind; [¶] 12. The right of using a wall as a party wall; [¶] 13. The right of receiving more than natural support from adjacent land or things affixed thereto; [¶] 14. The right of having the whole of a division fence maintained by a coterminous owner; [¶] 15. The right of having public conveyances stopped, or of stopping the same on land; [¶] 16. The right of a seat in church; [¶] 17. The right of burial; [¶] 18. The right of receiving sunlight upon or over land as specified in Section 801.5."

pp. 563–564.) The act consigns the regulation of the design and improvement of subdivisions to local agencies, and subjects subdividers to applicable local land use ordinances and plans. (*Gardner v. County of Sonoma, supra,* 29 Cal.4th at p. 997.) In this context, the term "design" encompasses the "location and size of all required easements and rights-of-way" (§ 66418),[5] and the term "improvement" refers to "any street work and utilities to be installed . . . on the land to be used for public or private streets, highways, ways, and easements, as are necessary for the general use of the lot owners in the subdivision" (§ 66419, subd. (a)).[6] To comply with the act, a person seeking to subdivide property "must secure local approval and record an appropriate map." (*van't Rood v. County of Santa Clara, supra,* 113 Cal.App.4th at pp. 563–564.)

Appellants do not suggest that Hunt, the original grantor, violated either local land use regulations regarding the design and improvement of subdivisions in creating the easement, or the provisions of the Map Act addressing "required" or "necessary" easements (§§ 66418, 66419). They contend only that the easement, as construed by the trial court, amounts to a subdivision under the act. Because nothing in the record suggests that Hunt obtained local approval for the easement and recorded an appropriate map, they argue that the easement, so construed, contravenes the act.

■ No reported case has squarely addressed whether a private easement of this sort constitutes a subdivision under the Map Act, and thus we are presented with a question of statutory interpretation. "The objective of statutory interpretation is to ascertain and effectuate legislative intent. To accomplish that objective, courts must look first to the words of the statute, giving effect to their plain meaning." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155].)

■ Under the Map Act, the term "subdivision" means "the division, by any subdivider, of any unit or units of improved or unimproved land, or any

---

[5] Section 66418 provides: " 'Design' means: (1) street alignments, grades and widths; (2) drainage and sanitary facilities and utilities, including alignments and grades thereof; (3) location and size of all required easements and rights-of-way; (4) fire roads and fire-breaks; (5) lot size and configuration; (6) traffic access; (7) grading; (8) land to be dedicated for park or recreational purposes; and (9) other specific physical requirements in the plan and configuration of the entire subdivision that are necessary to ensure consistency with, or implementation of, the general plan or any applicable specific plan as required pursuant to Section 66473.5."

[6] Subdivision (a) of section 66419 provides: " 'Improvement' refers to any street work and utilities to be installed, or agreed to be installed, by the subdivider on the land to be used for public or private streets, highways, ways, and easements, as are necessary for the general use of the lot owners in the subdivision and local neighborhood traffic and drainage needs as a condition precedent to the approval and acceptance of the final map thereof."

portion thereof, shown on the latest equalized county assessment roll as a unit or as contiguous units, for the purpose of sale, lease or financing, whether immediate or future." (§ 66424.) The act further defines the term "subdivider" to refer to a party "who proposes to divide, divides or causes to be divided real property into a subdivision for himself or for others." (§ 66423.)

In our view, these provisions, by their plain language, encompass the division of real property into units that constitute possessory interests in land, including leaseholds, but not the creation of the private easement at issue here. As we have indicated (see pt. A., *ante*), the easement is merely the right to use a portion of appellants' property in a restricted manner, and does not divide or sever the property into distinguishable possessory estates or interests.

We find additional support for this conclusion in *Robinson v. City of Alameda* (1987) 194 Cal.App.3d 1286 [239 Cal.Rptr. 926, 240 Cal.Rptr. 926]. There, the Robinsons owned two adjoining residences and occupied one of them. (*Id.* at p. 1287.) They sold the other to Webster, subject to the agreement that they could continue to use the rear portion of Webster's lot until they sold their own residence or died. (*Ibid.*) Webster subsequently sold his home to the Dalabas, who received notice of the agreement with the Robinsons. (*Id.* at pp. 1287–1288.) Apparently prompted by the Dalabas, the City of Alameda initiated an action against the Robinsons, contending that the agreement constituted an improper subdivision under the Map Act. (194 Cal.App.3d at p. 1288.)

The *Robinson* court rejected this contention, concluding that the agreement did not involve a sale, lease, or financing of land: "The agreement provides that the Robinsons acquired only the right to use the rear portion of the subject property, and have no ownership interest in it. By its own terms, the agreement is not a sale of land." (*Robinson v. City of Alameda, supra,* 194 Cal.App.3d at pp. 1288–1289.) In addition, the court reasoned that the agreement was for an uncertain duration, and thus did not create a leasehold estate. (*Ibid.*) Here, as in *Robinson*, respondent acquired the right to use appellants' property in a restricted manner, but acquired no ownership or possessory interest; thus the 1979 deed did not create a subdivision within the meaning of the Map Act.

Citing *Pescosolido v. Smith* (1983) 142 Cal.App.3d 964 [191 Cal.Rptr. 415], and four opinions of the Attorney General, appellants contend that

an exclusive easement necessarily constitutes a subdivision under the act.[7] These authorities, however, addressed factually distinguishable situations. In *Pescosolido*, the court concluded that two landowners who conveyed titles to portions of their land to their children by gift deed created a subdivision within the meaning of the act. (142 Cal.App.3d at pp. 968–973.) Unlike the 1979 deed, the gift deeds in *Pescosolido* created ownership interests in the land, and thus it is inapposite.

Similarly, each of the Attorney General's opinions concerns a scheme of joint or collective ownership of land that also accorded its members exclusive rights to reside on a portion of the land. (17 Ops.Cal.Atty.Gen. 79, 80–82 (1951) [parties who owned apartment building as tenants in common and accorded one another exclusive occupancy of an apartment within the building created subdivision]; 38 Ops.Cal.Atty.Gen. 125, 126–128 (1961) [tenants in common in real property who accorded one another exclusive occupancy of a residence on the property created subdivision]; 39 Ops.Cal.Atty.Gen. 82, 82–85 (1962) [ownership of land as a tenancy in common, coupled with ownership of the walls of individual apartment units on the land in fee simple, constituted subdivision]; 39 Ops.Cal.Atty.Gen. 82, 82–85 (1962); 57 Ops.Cal.Atty.Gen. 556, 556–560 (1974) [permits issued by fraternal organization to members allowing construction of private houses on land owned by the organization amounted to leaseholds and created subdivision].) Here, respondent has no ownership interest in the easement, and his exclusive occupation of the garage—which will cover only a small portion of the easement—is restricted to the uses delineated in the 1979 deed.

Appellants further contend that the trial court's interpretation of the 1979 deed, if affirmed, would encourage parties to circumvent the Map Act by subdividing property into "developable interests" through a pattern of exclusive easements. We recognize that courts must be vigilant regarding schemes designed to avoid the regulatory controls of the act. (*Pratt v. Adams* (1964) 229 Cal.App.2d 602, 603–604 [40 Cal.Rptr. 505].) However, no such scheme is presented here. As the trial court correctly determined, the easement is too restricted in scope to constitute a subdivision under the act. For the same reason, this determination does not assist attempts to evade the act. As we have indicated (see pt. A., *ante*), an interest in land, however styled, sufficiently unrestricted to be "developable"—as that term is ordinarily understood—would be a possessory interest, not an easement. In sum, the grant deed, as interpreted by the trial court, does not contravene the Map Act.

---

[7] Appellants also cite a treatise in support of their contention (Curtin & Merritt, Cal. Subdivision Map Act and the Development Process (Cont.Ed.Bar 2d ed. 2005) §§ 2.4–2.5, pp. 20–22). Because the views stated therein rest on *Pescosolido* and the opinions of the Attorney General noted in the text, we do not separately address this treatise.

## DISPOSITION

The judgment is affirmed. Respondent is awarded his costs.

Epstein, P. J., and Suzukawa, J., concurred.