Filed 6/26/13  Frankel v. Geier CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ALLAN FRANKEL et al., | D061238 |
| Plaintiffs, Cross-defendants and Respondents, | |
| v. | (Super. Ct. No. 37-2010-00051332-CU-OR-NC) |
| BRUCE A. GEIER, Individually and as Trustee, etc., | |
| Defendant, Cross-complainant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County,

Robert P. Dahlquist, Judge.  Affirmed.

Burkhardt & Larson, Philip Burkhardt and Francisco Garcia, Jr. for Defendant,

Cross-complainant and Appellant.

Circuit, McKellogg, Kinney & Ross and L. Daniel Pearl for Plaintiffs, Cross-

defendants and Respondents.

This appeal is from the trial court's order resolving a dispute between Allan Frankel and Stephanie Frankel (together, the Frankels) and Bruce Geier concerning vegetation the Frankels planted on Geier's roadway easement over the Frankels' property. Geier contends the trial court erred in denying his request to order the Frankels to remove the vegetation because he has the right, as a matter of law, to use the entire easement area for a roadway and parking. We find Geier's arguments unavailing and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Geier and the Frankels are neighboring property owners. Geier has an easement along the southern edge of the Frankels' property. A 1974 parcel map of the properties described the easement as a "40' Proposed Private Road Easement." Frankel purchased his property in 1978. At that time, there was a fence running along the south side of a road on the easement. When Geier purchased his property in 1988, approximately 10 to 12 feet of the easement width was a paved road and there was still a fence along the south side of that road. The road connected to Geier's driveway. In 2002 and 2004 grant deeds executed by Geier, the easement was described as being for "road purposes" and for "ingress and egress and public utility purposes."

After a 2007 fire destroyed the Frankels' home, they widened a portion of the paved area up to their driveway to 20 feet to comply with a local fire safety ordinance. Geier then extended the paving to the 20-foot width from where the Frankels' paving stopped to the eastern edge of the easement where his driveway was located. At the same time, Geier reinstalled a fence along the south side of the road because he was concerned vehicles would drive off a steep embankment on his property.

2

The Frankels commenced litigation to compel Geier to remove the fence from the easement because it excluded them from a portion of the easement area. The parties reached a settlement which required Geier to remove the fence and the Frankels to install fill dirt to flatten out the land south of the road. The parties agreed that by settling they did "not intend to, and are not in any way, modifying or changing their respective rights, duties and obligations in connection with the forty foot (40') wide roadway easement across the Frankel Property."

After entering into the settlement agreement, the Frankels planted vegetation in the easement area south of the roadway and bordering Geier's property. Geier brought a motion to enforce the settlement agreement, asserting the vegetation "obstruct[ed] [his] use of the easement by preventing or inhibiting [t]raffic across the southerly portion of the easement which provides access to the westerly portion of [his] property." Geier also claimed the vegetation prevented transitory parking on the south side of the easement which had historically taken place. Thus, Geier requested an order requiring the Frankels to remove the vegetation.

After the trial court visited the property and considered the evidence presented by the parties, it denied Geier's motion for an order requiring that the Frankels remove the vegetation. In describing the easement, the trial court noted an ambiguity in the easement's description. The court stated, "[I]t is not entirely clear why the drafter of th[e] [parcel] map included the word 'proposed' in the description of the easement. For example, it is not clear if the width was 'proposed' or the location was 'proposed' or something else was 'proposed.'" Relying on *Scruby v. Vintage Grapevine, Inc*. (1995)

3

37 Cal.App.4th 697 (*Scruby*), the court found based on the evidence presented and its own inspection of the property that the vegetation did not unreasonably interfere with the easement's purpose or Geier's use of the easement.

DISCUSSION

A.  Applicable Law

"An easement is a restricted right to specific, limited, definable use or activity upon another's property, which right must be *less* than the right of ownership." (*Mesnick v. Caton* (1986) 183 Cal.App.3d 1248, 1261.)  An easement for a roadway grants a "right of unobstructed passage to the holder of the easement." (*Scruby*, *supra*, 37 Cal.App.4th at p. 703.)  It also includes "as necessary incidents thereto the reasonable use of the easement by each party for such transitory parking as will not interfere with the rights of the other." (*Heath v. Kettenhofen* (1965) 236 Cal.App.2d 197, 204.)

Where the easement grant specifies the width of the unobstructed passage, the dominant tenement owner "*may* have the absolute right to use to the limits of the specified width," free from interference by the servient tenement owner, even though that width is wider than needed.  (*Ballard v. Titus* (1910) 157 Cal. 673, 681–682, italics added.)  However, "a deed granting a nonexclusive easement of a specified width does not, as a matter of law, give the owner of the dominant tenement the right to use every portion of the easement." (*Scruby*, *supra*, 37 Cal.App.4th at p. 700.)  The specification of width and location "does not always determine the extent of the burden imposed upon the servient land." (*Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 581.)

4

"[R]ather, that burden can properly be measured by the use and purpose for which the easement has been granted." (*Scruby*, *supra*, 37 Cal.App.4th at p. 705.)

"In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply. If the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired. [Citations.] If the language is ambiguous, extrinsic evidence may be used as an aid to interpretation unless such evidence imparts a meaning to which the instrument creating the easement is not reasonable susceptible. [Citation.]" (*Scruby*, *supra*, 37 Cal.App.4th at p. 702.) However, when there is no evidence of the parties' intentions at the time the easement was granted, a court may look to the surrounding circumstances, including the nature and purpose of the easement, the physical conditions and character of the servient tenement, and the requirements of the grantee, to determine the controlling intent. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1168; *Scruby*, *supra*, 37 Cal.App.4th at p. 705.)

B. Scope of the Easement

Geier contends the trial court misapplied the foregoing legal principles because he has an unambiguous easement 40 feet in width. To determine whether the court erred in applying the law, we must determine the scope of the easement, a matter we review de novo. (*Van Klompenburg v. Berghold* (2005) 126 Cal.App.4th 345, 349.)

The specification of width and location of a right-of-way on the face of an instrument does not necessarily mean the instrument is unambiguous. (*Scruby*, *supra*, 37 Cal.App.4th at p. 704; *Pasadena v. California-Michigan etc. Co.*, *supra*, 17 Cal.2d at

5

p. 581.) In *Scruby*, for example, the easement grant deed provided the grantee a " 'nonexclusive easement, 52 feet in width, for road and utility purposes'" that bounded a road ending in a cul-de-sac. (*Scruby*, *supra*, 37 Cal.App.4th at p. 701.) The precise boundaries of the easement were set out in a deed by reference to a survey map. (*Ibid*.) The grantee, a husband and wife, argued they were entitled to use every portion of their 52-foot-wide easement for "road and utility purposes." (*Id*. at p. 703.)

The *Scruby* court disagreed, relying on the principle that the " 'specification of width and location of surface rights-of-way does not always determine the extent of the burden imposed on the servient land. . . .' [Citation.]" (*Scruby*, *supra*, 37 Cal.App.4th at p. 704.) The court instead agreed with the trial court that the scope of the easement grant was ambiguous on its face "concerning the matter of the physical area over which [the grantee] has roadway use," inasmuch as the grant of easement "does not specifically describe the intended roadway as 52 feet in width ending in a 100-foot cul-de-sac," but instead provides " a 'nonexclusive easement, 52 feet in width, for road and utility purposes.'" (*Id*. at p. 705.)

Here, similar to *Scruby*, the easement grant was ambiguous in that it did not specifically describe an intended roadway 40 feet in width. (*Scruby*, *supra*, 37 Cal.App.4th at p. 705.) Instead, the easement in this case was merely described as a "40' Proposed Private Road Easement." As noted by the trial court, it is unclear whether the drafter of the parcel map intended to "propose" the location or width of the roadway. Adding to the confusion, at least one later grant deed in the record indicates the easement has been "delineated and designated as 'Proposed 40 foot Private Road Easement' and

6

'40 Foot Proposed Private Road Easement.'"  On its face, the grant of easement does not make clear whether the stated width of the easement describes an actual passageway 40 feet in width for the length of the easement, or merely describes an area 40 feet in width over which the grantee has a right-of-way less than 40 feet.  The existence of an ambiguity is further evidenced by the parties' settlement agreement concerning the fence.  It appears from that agreement that the parties had a dispute concerning the scope of the easement because they specifically stated the settlement agreement did not modify their rights, duties and obligations in connection with the easement and the agreement excluded "G[eier]'s roadway easement rights over the Frankel Property."  Thus, we reject Geier's argument that *Scruby* is inapplicable because there was no ambiguity in his easement grant.

Although not expressly stated in the trial court's order, it appears the trial court construed the easement as granting a roadway less than 40 feet in width.  Based on the surrounding circumstances, the trial court could reasonably infer that the original contracting parties did not contemplate a roadway 40 feet in width.  The evidence revealed that there has never been a 40-foot road or intention to place a road of that width on the easement.  Instead, there was a 10 to 12-foot road providing access to the servient tenement which was subsequently widened to 20 feet as a result of a fire at the Frankels' property.  Further, as far back as 1978, there was a fence along the south side of the narrow road.  "Where the court's 'construction appears to be consistent with the true intent of the parties an appellate court will not substitute another although it may seem equally tenable.'"  (*Scruby*, *supra*, 37 Cal.App.4th at p. 706.)

7

C. Application of Easement Law

Geier does not argue the trial court's finding that the Frankels' vegetation does not unreasonably interfere with the easement's purpose or Geier's use of the easement is unsupported by the evidence. Instead, he contends he has the right as a matter of law to use the entire easement area, including for parking, free from interference by the Frankels.

While Geier has the right of unobstructed passage on the easement (*Scruby*, *supra*, 37 Cal.App.4th at p. 703), there is nothing in the easement grant suggesting Geier has the right to *exclusive* use of each and every square inch of the easement area for passage or otherwise. To the contrary, the evidence indicates the easement is *nonexclusive*. Thus, "the common users 'have to accommodate each other.'" (*Id.* at p. 703.)

Based on its own inspection of the property and the evidence presented by the parties, the trial court found the Frankels' vegetation did not constitute an unreasonable interference with Geier's rights. Where, as here, the easement is nonexclusive, the dominant tenement owner must use the easement so as "to impose as slight a burden as possible on the servient tenement." (*Scruby*, *supra*, 37 Cal.App.4th at p. 702.) Because an easement is less than the right of ownership, the servient tenement owner retains "[e]very incident of ownership not inconsistent with the easement" granted. (*Ibid.*) Therefore, "[t]he owner of the servient estate may make continued use of the area the easement covers so long as the use does not 'interfere unreasonably' with the easement's purpose." (*Id.* at pp. 702–703.) Based on our review of the record, the trial court did not

err in its application of the law in determining the parties' respective rights relating to the

roadway easement.

DISPOSITION

The order is affirmed.  Respondent is entitled to costs on appeal.


McINTYRE, Acting P. J.

I CONCUR:

AARON, J.

IRION, J.

I concur in the result.

Given the strained and litigious relationship between the parties, we need to be clear about the precise scope of this court's ruling. Therefore, I write separately to make clear *what was, and what was not*, before the trial court.

What *was* before the trial court were two issues regarding the parties' respective rights in the easement: (1) Whether Geier had the right to unfettered use of the easement area to the south of the roadway for any purpose; and (2) whether Frankel was required to remove the landscaping from the portion of the easement that was not covered by asphalt. The trial court decided *those* issues, and we have reviewed *those* rulings.

What *was not* before the trial court — and hence was not included within the scope of this appeal — was the issue of Geier's right to construct a second access road across the southern portion of the easement.

Importantly, as was discussed at the hearing, paragraph 1.5(b) of the parties' settlement agreement contemplated that Frankel would permit Geier to have access to his property through the southern portion of the easement with 30-days notice. At the hearing, the parties discussed that when the fence was in place, Geier had a second access road to his property through a gate. Geier currently desires to have a similar access road through the southern portion of the easement, in part because he has plans to build a guest house in that area. Frankel's attorney expressly agreed at the hearing that a second access road to Geier's property was contemplated by the settlement agreement and was acceptable to Frankel. Moreover, Frankel's briefing in the trial court expressly cited the

relevant portion of the settlement agreement and stated that "the Frankel's do not seek to deprive Mr. Geier of an additional access point to his land." The trial court stated at the hearing that its eventual ruling would not interfere with the parties' preexisting agreements as to the second access road.

Accordingly, nothing in the trial court's ruling, nor in this court's review of that ruling, should be read to foreclose the right of Geier to build a second access road through the southern portion of the easement, or to foreclose any other right arising from the easement that was not expressly addressed by the trial court.

IRION, J.

2