[No. H013268. Sixth Dist. May 15, 1996.]

ROBERT SILACCI et al., Plaintiffs, Cross-defendants and Appellants, v. RICHARD B. ABRAMSON et al., Defendants, Cross-complainants and Respondents.

**COUNSEL**

Anderson & Bolles, Hutton, Foley, Anderson & Bolles and Donald S. Bolles for Plaintiffs, Cross-defendants and Appellants.

Abramson, Church & Stave and George E. McInnis for Defendants, Cross-complainants and Respondents.

**OPINION**

**WUNDERLICH, J.**—This lawsuit resulted from a dispute between neighbors over use and ownership of a portion of land behind their houses. Richard B. and Janet Abramson (hereafter collectively Abramson) and their predecessors fenced in and used as a backyard some 1,600 square feet which Robert and Rusty Silacci (hereafter collectively Silacci) contend belongs to them. Silacci filed a complaint for declaratory relief, and Abramson cross-complained to quiet title to a prescriptive easement. The trial court found that Abramson had an exclusive prescriptive easement over the fenced-in portion of Silacci's property. We reverse the judgment.

### FACTS AND PROCEDURAL BACKGROUND

The disputing neighbors live in adjoining subdivisions along highway 68 south of Salinas in Monterey County. The earlier development, called Toro Park Estates, is the one in which Abramson lives. The adjoining subdivision, Toro Hills Estates, developed later, is the one in which Silacci lives.

The disputed parcel lies where the rear boundaries of the backyards converge. Toro Creek runs through the Silacci lot and that part of Silacci's property which lies across Toro Creek next to Abramson's property line is the portion in dispute.

Abramson's predecessor-in-interest was David Scott. Before Toro Hills was developed, Scott placed a three-foot high picket fence around some undeveloped land behind his backyard. The undeveloped land (now the disputed parcel) belonged to one Carlton, who had given Scott and his neighbors permission to take flood-control measures beside Toro Creek which ran through Carlton's land.

Carlton sold his land to a developer, Salinas One, which sold it to another developer, the Chamberlain Group (hereafter Chamberlain). Chamberlain developed Toro Hills Estates. As a condition of development Monterey County required of the developer a scenic easement along Toro Creek where there are trails used by horseback riders and hikers. The developer promised that no structures would be built nor gardens planted along this easement, other than those shown on the subdivision plan. This scenic easement which is along the creek affects the disputed parcel.

In May 1989 Chamberlain sold the former Carlton lot to Bob Franscioni, predecessor-in-interest to the Silaccis. A month after the sale, Chamberlain wrote Abramson to say that his rear fence was encroaching on Franscioni's lot. Chamberlain offered to relocate the fence to the correct boundary line. Abramson replied that he believed he was entitled to keep the property located inside of his fence. Later in 1989 Abramson wrote Franscioni suggesting that Franscioni grant him an easement. Franscioni, who had no use for the disputed parcel, talked to Abramson about it and gave him oral permission to use the land. Abramson testified at trial, however, that he did not believe he needed Franscioni's permission, and that he would have continued to use the land without it.

The matter lay dormant until 1991 when Robert Silacci's mother, Dinna Silacci, acquired the lot from Franscioni. Dinna Silacci offered to lease the property in question to Abramson for $50 per year until Abramson sold the residence. She then recorded a consent to use the property in 1991 to stop adverse use by Abramson. Abramson did not respond to Dinna Silacci's offer, so she informed Abramson her son would begin to take the fence down. Abramson threatened legal action.

Robert Silacci then acquired the lot from his mother and brought the instant lawsuit to determine his rights over the property in question. Silacci sought a declaration of his rights with respect to the disputed property, and Abramson cross-complained to quiet title to a prescriptive easement over the land. After a court trial, the court found that Abramson had an exclusive prescriptive easement over the fenced-in portion of Silacci's property. The court noted that Abramson's use of the disputed property during the statutory period was exclusive and his continued use of the easement was to be exclusive, as well. Stating, "Clearly, the privately enclosed yard area of a home does not lend itself to shared use," the court held that Abramson's use of the easement was restricted to a backyard garden area, consistent with its historical use, so as to minimize the burden upon the servient estate. It is from that judgment that Silacci appeals.

## DISCUSSION

The only issue to be resolved in this case is the propriety of the trial court's award to Abramson of an exclusive prescriptive easement for an enclosed yard. Whether the elements of prescription are met is a factual question, but the facts here are essentially undisputed. Given the undisputed facts, resolution of this case becomes a question of law involving the difference between two legal concepts relating to rights in the land of another: claim of title by adverse possession, and mere prescriptive use of another's land.

Adverse possession is a means to acquire ownership of land. In adverse possession, the claimant must prove open and notorious use, hostile to the true owner, for a period of five years, and he must also show that he has paid taxes on the parcel of land.[1] Adverse possession, by use of the term "possession," implies ownership and title. (See 4 Witkin, Summary of Cal. Law, *supra*, Real Property, §§ 93-110, pp. 318-331, especially § 93.)

By comparison, an easement is merely a right to use the land of another. With an easement, the owner of the burdened land is said to own the servient tenement, and the owner of the easement is said to have the dominant tenement. Every incident of ownership not inconsistent with the enjoyment of the easement is reserved to the owner of the servient tenement. An easement acquired by prescription is one acquired by open and notorious use. For example, if one uses a road across the land of another for a certain period, one may acquire an easement by prescription. (4 Witkin, Summary of Cal. Law, *supra*, Real Property, §§ 434, 436, 449, 462, pp. 614, 617, 629, 639-640.) Of course, if taxes are separately assessed against an easement, the claimant must pay these. (*Id.* at § 462, p. 640.)

We find guidance on the issue of whether Abramson was entitled to an exclusive prescriptive easement in *Raab v. Casper* (1975) 51 Cal.App.3d 866 [124 Cal.Rptr. 590]. In that case, the Caspers built their family home encroaching on Raab's property. Ten years before the suit was commenced, the Caspers had placed their driveway, utility lines, and landscaping on Raab's land. The appellate court reversed the trial court's ruling granting the Caspers a prescriptive easement over Raab's land for roadway and utility lines, and " 'for the maintenance of lawn, fences, shrubs, fruit trees, and landscaping around the CASPER house . . . .' Although adroitly phrased to avoid the language of a grant of title, the last-quoted clause was undoubtedly

---

[1]"If no taxes are *assessed,* no payment is necessary; but the burden of showing that there was no levy or assessment is upon the *adverse claimant.* [Citations.]" (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 110, p. 330, italics in original.)

designed to give [the Caspers] unlimited use of the yard around their home. [The Caspers] doubtless did not intend [the Raabs], owners of the nominal servient tenement, to picnic, camp or dig a well in their yard. They doubtless did not intend to own a house on one side of the boundary with an unmarketable yard on the other. The findings and judgment were designed to exclude [the Raabs] from [the Caspers'] domestic establishment, employing the nomenclature of easement but designed to create the practical equivalent of an estate." (51 Cal.App.3d at p. 877.)

The appellate court stated that the case really presented the issue of adverse possession. However, there was no finding of exclusive use. Also, the evidence failed to support findings that the yard was separately assessed for property tax purposes, or that the Caspers had paid those taxes during the adverse use. Therefore, the judgment could not be upheld either on the basis of a prescriptive easement or on the theory of adverse possession. (51 Cal.App.3d at pp. 877-878.)

Respondent relies on *Otay Water Dist.* v. *Beckwith* (1991) 1 Cal.App.4th 1041 [3 Cal.Rptr.2d 223]. In that case the water district purchased property, and unknown to the parties, the grant deed conveyed parcels not owned by the seller. Otay constructed a reservoir on the land. (*Id.* at p. 1044.) Otay discovered the error in 1984, 22 years after it purchased the land. Otay then brought an action against the three neighbors on whose land the reservoir encroached, seeking to quiet title to a prescriptive easement. The trial court granted summary judgment to Otay, and only Beckwith appealed. (1 Cal.App.4th at p. 1044.)

The trial court found, and the appellate court agreed, that Otay had acquired an exclusive prescriptive easement. The elements for a prescriptive easement—open, notorious, uninterrupted use hostile to the true owner, under claim of right, for the statutory period of five years—were satisfied. (1 Cal.App.4th at pp. 1045-1046.)

Beckwith argued on appeal that a prescriptive easement, by definition, cannot be exclusive. The court noted that the scope of a prescriptive easement is determined by its historical use. The court held that where the use during the prescriptive period was exclusive, a court could properly determine that future use would be exclusive. The appellate court held: "The [trial] court's ruling is particularly justified on this record where Otay submitted uncontested evidence showing Beckwith's proposed recreational use would unreasonably interfere with Otay's right to continue operating a reservoir. Otay established its exclusive use is necessary to prevent potential contamination of the water supply and for other health and safety purposes."

(1 Cal.App.4th at pp. 1047-1048.) The court reasoned that this exclusive easement did not amount to a fee simple estate, because Beckwith could take back his property if Otay deviated from the historical use. (1 Cal.App.4th at p. 1048.)

The *Otay Water Dist.* case must be limited to its difficult and peculiar facts. A public water company's right to keep drinking water safe from contamination must be given precedence. An exclusive prescriptive easement is, nonetheless, a very unusual interest in land. The notion of an exclusive prescriptive easement, which as a practical matter completely prohibits the true owner from using his land, has no application to a simple backyard dispute like this one. An easement, after all, is merely the right to use the land of another for a specific purpose—most often, the right to cross the land of another. An easement acquired by prescription is one acquired by adverse use for a certain period. An easement, however, is not an ownership interest, and certainly does not amount to a fee simple estate. To permit Abramson to acquire possession of Silacci's land, and to call the acquisition an exclusive prescriptive easement, perverts the classical distinction in real property law between ownership and use. The trial court's order here amounted to giving Silacci's land completely, without reservation, to Abramson. This the court did, using the term "exclusive prescriptive easement," an unusual doctrine which does not apply.

Because the case was tried on the theory of prescriptive easement, the issue of payment of taxes on the disputed parcel never came up. On remand Abramson is free to pursue the theory of adverse possession, and to prove he paid separately assessed taxes. It is to be noted, though, that if Abramson pursues adverse possession, the effect of Dinna Silacci's recording the consent to use (Civ. Code, § 813) would need to be determined.

DISPOSITION

The judgment is reversed. Costs to appellants.

Cottle, P. J., and Bamattre-Manoukian, J., concurred.