Filed 2/20/24  Marcus v. Farsai CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SONJA M. MARCUS et al., | H050753 |
|     Plaintiffs, Cross-defendants and Respondents, | (Santa Clara County Super. Ct. No. 17CV307794) |
|     v. | |
| CARL FARSAI et al., | |
|     Defendants, Cross-complainants and Appellants. | |

Carl and Diana[1] Farsai (collectively, the Farsais) appeal from a judgment after a court trial that terminated their easement over their neighbors' property.  The easement burdens property that belonged to Sonja and David Marcus (later assigned to the Marcus Living Trust).  The Farsais also challenge the trial court's award to the Marcuses of $16,531 in economic damages and $200,000 in noneconomic damages for trespass and nuisance.

The Farsais contend that the trial court erred in terminating the easement.  They also maintain the Marcuses did not establish the elements of trespass and nuisance, the

---

[1] We refer to appellant Diana Farsai using the spelling of her first name as it appears in the notice of appeal.  The parties' briefs spell her first name as "Diana" and "Dianna."  Neither party explains this discrepancy.

Farsais neither intended to nor recklessly inflicted "severe emotional distress" on the Marcuses, and the Marcuses' emotional distress was not severe.

For the reasons explained below, we reject the Farsais' contentions and affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND[2]

Based on their respective street addresses, we describe the Marcuses' lot as the "Quinterno Property" and the Farsais' lot as the "Carmen Property." In 1981, Agnes Cowger owned a parcel on Carmen Road in Cupertino that encompassed both the Quinterno and Carmen Properties. That year, she and some of her neighbors entered into an agreement with Monta Vista Development Company to subdivide their respective parcels.

Cowger's lot was subdivided into the 7,509 square-foot parcel that is the Carmen Property (on which Cowger continued to live until her death and where the Farsais now live) and the 5,082 square-foot parcel on Quinterno Court that is the Quinterno Property (on which the Marcuses[3] now live). The Quinterno Property and the Carmen Property share a common back property line, such that the backyard of each house faces the other. The Carmen Property sits at the top of a hill and lies to the west of the Quinterno Property.

In 1983, Cowger sold the Quinterno Property to Monta Vista Properties. The grant deed documenting the sale from Cowger to Monta Vista Properties was recorded in Santa Clara County on December 19, 1983 (1983 Grant Deed). The property granted by Cowger to Monta Vista is described as "The Southerly 75 feet of Lot 102 and the

---

[2] These facts are taken from the trial court's statement of decision or are otherwise undisputed. In setting out the facts, we "indulg[e] all legitimate and reasonable inferences to uphold the court's decision." (*In re Marriage of Lee & Lin* (2019) 41 Cal.App.5th 698, 702.)

[3] David Marcus died in mid-2020 during the pendency of this litigation. Following David's death, the Marcuses' son, Jonathan Erik Marcus, became a plaintiff in the litigation. For simplicity, we generally refer to plaintiffs as "the Marcuses."

Southerly 75 feet of the Westerly 69.76 feet of Lot 101 of 'Map of Insp[i]ration Point Monta Vista,' filed April 11, 1917 in Book 'P' of Maps at Page 18 of Maps."

The 1983 Grant Deed contains the following language documenting an easement: "The grantor herein reserves second easement[4] for 'YARD USE', including all normal and/or customary uses that would be associated with a residence backyard, over the Westerly 20 feet of Lot 103[5] of said Map of Insp[i]ration Point Monta Vista" (hereafter, easement).

The easement which Cowger reserved for " 'YARD USE' " is a rectangle 75 feet wide (the entire width of her backyard) and 20 feet deep. It encompasses approximately 30 percent of the property Cowger sold to Monta Vista.

Cowger continued to own and live on the Carmen Property. The property described by the easement in the 1983 Grant Deed bordered the east end of Cowger's backyard. Cowger maintained a wooden fence on the eastern end of the easement (i.e., on the Quinterno Property she had sold to Monta Vista). For purpose of this opinion, we refer to this fence as the "back fence." The record contains no evidence that Cowger's property after 1983 had any other back fence. In other words, the only fence marking the back end of "Cowger's" yard was situated on land belonging to the Quinterno Property and fenced off that land from the residence on the Quinterno Property.

Cowger also maintained a wooden fence on the northern edge of her property (bordering Quinterno Court) that extended 20 feet into the Quinterno Property, (i.e.,

---

[4] The 1983 Grant Deed does not explicitly describe a "first easement."

[5] Cowger did not own lot 103, which was located next door to the lot Cowger owned (lot 102). Although a land surveyor hired by Farsai to prepare a boundary survey of the Carmen Property expressed the " 'opinion that said Lot 103 is a typo and should read Lot 102,' " the trial court determined that the surveyor's opinion was "not particularly probative in resolving the intent of Agnes Cowger at the time she reserved the yard use easement." Neither party contends the easement is invalid because of its reference to lot 103.

along the northern end of the easement). For purpose of this opinion, we describe this fence as the "side fence."[6]

Cowger used the land described by the easement as a garden (maintained with ivy, flowers, and a grassy area) until she passed away in the early 2000s.

Monta Vista Properties sold the Quinterno Property to the Smiths and recorded the grant deed with the county in 1984. The Smiths in turn sold the Quinterno Property to the Marcuses and recorded the grant deed with the county in 1986. The Marcuses then transferred the Quinterno Property to the Marcus Trust and recorded the grant deed documenting this transaction with the county in 1993. None of these deeds related to the Quinterno Property mentions an easement.

After Cowger's death, the trustees of the Agnes D. Cowger Family Trust dated June 17, 1987 (Cowger Trust)[7] sold the Carmen Property to the Farsais. The grant deed was recorded in 2004. The property purchased by the Farsais from the Cowger Trust is described by its geographic coordinates. After the paragraph describing the geographic coordinates, the following language appears:

"EXCEPTING THEREFROM that portion thereof, as granted to Monta Vista Properties, a General Partnership, by Deed recorded December 19, 1983 in Book I158, Page 183 of Official Records, described as follows: [¶] The Southerly 75 feet of Lot 102 and the Southerly 75 feet of the Westerly 69.76 feet of Lot 101 of 'Map of Inspiration Point Monta Vista,' filed April 11, 1917 in Book 'P' of Maps at Page 18."

---

[6] The record does not indicate who constructed these fences, but in its statement of decision the trial court observed that "the [back] fence [] apparently was in place at the time Cowger divided her lot." The Farsais' briefing in this court states that Cowger built the fence on the easement line but provides no record citation for that assertion. The Marcuses' brief also states that Cowger built the fence and cites the trial court's statement of decision for that fact, but the statement of decision does not include this finding.

[7] The record does not include the grant deed documenting the transfer of the Carmen Property from Cowger to the Cowger Trust.

4

This language corresponds to the description of the Quinterno Property sold by Cowger to Monta Vista Properties in 1983. The grant deed documenting the sale of land from the Cowger Trust to the Farsais does not reference any easement.

After having a surveyor prepare a boundary survey, the Farsais demolished the existing house on the Carmen Property and built their current residence. The Farsais did not maintain the garden as Cowger had, and the area became overgrown with weeds. Carl Farsai testified that his children played in the easement when they were younger and their dog used the area. The trial court described the Farsais' use of the easement as a yard as "minimal." Nevertheless, it credited the Farsais' testimony[8] regarding their children's and dog's use of the easement as a yard and concluded that the Marcuses "failed to show that [the Farsais] intended to abandon" the easement.

In 2016, the Farsais removed a portion of the side fence. Carl Farsai testified that he removed the fence because it had begun to fall down. Although part of the fence the Farsais removed was located on the Quinterno Property, the Farsais did not notify the Marcuses of their plan to remove the fence or request the Marcuses' permission to do so.

In place of the portion of the side fence that the Farsais removed, they constructed a concrete wall, which the trial court found to be a retaining wall. Carl Farsai planned to construct a wooden fence on top of the concrete wall. He also began terracing the slope from the patio area of the Carmen Property into the easement area to level the ground. The trial court concluded that the Farsais intended to regrade the easement area "to expand the level portion of" their backyard (i.e., the portion belonging to the Carmen Property, which did not include the easement).

The Marcuses' residential construction expert, William Fry, prepared a report and testified that the construction of the concrete wall and the regrading of the slope of the

---

[8] We rely on the trial court's statement of decision for information regarding the testimony at the court trial. The record on appeal does not include a reporter's transcript of the proceeding.

5

easement area created a hazardous condition for the Quinterno Property. Fry testified that the original grade of the easement area, which slopes downward from the Carmen Property to the Quinterno Property, "changed significantly, and that there is much more dirt present now than before." Photographs taken of the easement area before and after the Farsais began regrading the property confirm Fry's testimony.

With respect to the Farsais' construction of the concrete wall, Fry testified that, because of the way it was constructed, the concrete wall could overturn or cause water damage to the Quinterno Property. The trial court found that, taken together, "the concrete wall and the substantial regrading of the easement area has affected the natural drainage on" and "is harmful to" the Quinterno Property.

Sonja Marcus "testified that the concrete wall was upsetting to both her and her husband," and that they "believed that the Farsais were using the concrete retaining wall to annex the easement portion of the [Quinterno Property], legally owned by the Marcuses, to" the Farsais' Carmen Property.

The Marcuses sought to discuss their concerns regarding the concrete wall with the Farsais but were rebuffed. Jonathan Erik Marcus, Sonja and David Marcuses' adult son, testified that the dispute over the concrete wall and easement was a " 'tremendous source of stress and concern' " for both him and his parents, and described to the trial court the extent of his mother's distress, including noting that she lost sleep over the dispute. Jonathan believed the Farsais' treatment of his parents was " 'unjust,' " was " 'one of the wors[t] things you could [do to] someone in their 80s,' " and caused his parents " 'extreme suffering.' " The Marcuses believed the existence of the concrete wall made it "impossible" for them to sell the Quinterno Property for "fair market value," thereby delaying Sonja Marcus' plans to downsize to a smaller home.

Neither the Farsais nor the Marcuses removed or wanted to remove the wooden back fence to give both families access to the easement area.

6

In 2017, the Marcuses filed a complaint alleging the Farsais had committed negligent and willful trespass.  The Marcuses sought both a declaration that the easement was expressly excluded from the deed conveying the Carmen Property to the Farsais and a permanent injunction compelling the Farsais to remove the concrete wall from the Marcuses' property.  The Farsais filed a cross-complaint against the Marcuses seeking to quiet title to the easement and a declaration of the Farsais' and Marcuses' respective ownership interests, rights, obligations, and responsibilities with respect to the easement.  After David Marcus died in mid-2020, Sonja Marcus filed a first amended complaint in December 2020 to add Jonathan as a plaintiff, both as an individual and as a cotrustee of the Marcus Trust.  The first amended complaint also added claims for nuisance and financial elder abuse, and sought additional relief, including economic and noneconomic damages.  The Marcuses filed a second amended complaint in February 2021.[9]

The trial court conducted a court trial in 2022 that was not reported.  In a written statement of decision, the trial court found the easement invalid both because it impermissibly amounted to a fee (preventing the Marcuses from any use of the area) and because it violated municipal zoning laws.  As an alternative basis for its decision, the court concluded the Farsais had forfeited the easement by misuse by constructing the concrete wall and regrading the land.  The court found the Farsais' actions constituted both trespass and nuisance, but the Marcuses did not prove elder financial abuse.  The court denied the Farsais the relief requested in their cross-complaint and denied the Marcuses punitive damages.

The trial court entered judgment against the Farsais and ordered (1) the Marcuses to remove the concrete wall serving as the side fence, remove the wooden back fence, backfill and regrade the site of the easement, and construct a new fence on the boundary

---

[9] The second amended complaint restated but did not add or remove any causes of action.  The Marcuses also amended their request for relief in the second amended complaint by requesting treble punitive and exemplary damages.

line between the Quinterno and Carmen Properties; and (2) the Farsais to regrade the area on the Carmen Property above the site of the easement to restore the natural slope of the land, pay the Marcuses $16,531 in economic damages to cover the cost of removing the concrete wall and regrading the easement area, share with the Marcuses the cost of building the new fence on the boundary line between the Quinterno and Carmen Properties, and pay the Marcuses $200,000 in noneconomic damages. The trial court also ordered the extinguishment of the easement recorded in the 1983 Grant Deed, thus terminating any rights current and future owners of the Carmen Property had to access or use land on the Quinterno Property.

The Farsais timely appealed.

## II. DISCUSSION

The Farsais argue the trial court erred in its findings and orders. They maintain (1) the easement is valid because it does not violate zoning laws and is not tantamount to a fee; (2) the construction of a concrete wall for the fence and regrading of the property did not constitute misuse of the Farsais' easement rights; and (3) the Farsais' conduct "lack[ed] any intention or recklessness to inflict severe emotional distress" and the distress the Marcuses suffered was not "severe." The Farsais also contend that they cannot be held liable for trespass or nuisance on the grounds that their activity with respect to the easement did not harm the Marcuses or the Marcuses' land.

The Marcuses dispute these points and request that this court sanction the Farsais for having filed a frivolous appeal.[10]

---

[10] In their respondents' brief, the Marcuses contend that the Farsais' appeal is frivolous and request this court to impose sanctions in the amount of $9,000 in attorney fees. The Marcuses did not file a separate motion for sanctions and did not provide any declaration supporting their fee request. As the Marcuses' request for sanctions does not comply with the California Rules of Court, we decline to consider its merits. (See Cal. Rules of Court, rule 8.276(b)(1); see also *FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 807.)

8

A. *Applicable Laws*

1. Easements

An easement provides the easement owner with " 'a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be *less* than the right of ownership.' " (*Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1598 (*Blackmore*).)  In other words, " ' " '[t]he owner of an easement is not the owner of the property' " ' " (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1174), but, rather, merely has an " 'incorporeal interest in land' " that " ' " 'confers a right upon the owner thereof to *some* profit, benefit, dominion, or lawful use out of or over the *estate* of another.' " ' " (*Hansen v. Sandridge Partners, L.P.* (2018) 22 Cal.App.5th 1020, 1032.)

"An easement defines and calibrates the rights of the parties affected by it" (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1307 (*Mehdizadeh*)), and "[t]he extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." (Civ. Code, § 806.)[11]

"The land to which an easement is attached is called the dominant tenement; the land upon which a burden or servitude is laid is called the servient tenement." (§ 803; see also *Silacci v. Abramson* (1996) 45 Cal.App.4th 558, 562.)  On the one hand, the servient tenement owner " ' "may make any use of the land that does not interfere unreasonably with the easement." ' " (*Mehdizadeh*, *supra*, 46 Cal.App.4th at p. 1308.)  On the other hand, the dominant tenement owner "may do that which is reasonably necessary to enjoy the easement and, as an incident thereto, keep it in repair and fit for use.  [Citation.]  But the easement may not be substantially altered without the consent of the owner of the servient estate." (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 707 (*Scruby*).)  Use of an easement, whether such easement was created by express grant or reservation, implication, or prescription, must "impose as slight a burden as possible on

---

[11] Unspecified statutory references are to the Civil Code.

the servient tenement" (*id*. at p. 702) and must not alter the easement "to impose an unreasonable or unintended burden on the servient tenement." (*Thorstrom v. Thorstrom* (2011) 196 Cal.App.4th 1406, 1422 (*Thorstrom*).)

"When an exclusive easement has been established, a dominant tenement owner may use the easement area only for a limited set of purposes, and the easement may be terminated if the dominant tenement owner ceases to use the area for those purposes." (*Romero v. Shih* (Feb. 1, 2024, S275023) __ Cal.5th __ [2024 WL 374870, at *7] (*Romero*); see also § 811, subd. 3 ["A servitude is extinguished . . . [b]y the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise."].) "Whether or not the acts or conduct of an easement owner are sufficient to terminate the easement is a question of fact." (6 Miller & Starr, Cal. Real Estate (4th ed. 2023) § 15.77, p. 15-283.)

### 2. Trespass and Nuisance

Trespass is " ' "an invasion of the interest in the exclusive possession of land, as by entry upon it" ' " (*Capogeannis v. Superior Court* (1993) 12 Cal.App.4th 668, 674 (*Capogeannis*)), and " 'may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it." (*Newhall Land & Farming Co. v. Superior Court* (1993) 19 Cal.App.4th 334, 345, citing Rest.2d Torts, § 161, subd. (1).) "The elements of trespass are: (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm." (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 262.)

In contrast, " ' "[a] nuisance is an interference with the interest in the private use and enjoyment of the land and does not require interference with the possession." ' " (*Capogeannis*, *supra*, 12 Cal.App.4th at p. 674; see also § 3479 ["Anything which is

10

injurious to health, including, but not limited to, . . . an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property."].)  A nuisance is distinguishable from a trespass inasmuch as "liability for nuisance does not require proof of damage to the plaintiff's property; proof of interference with the plaintiff's use and enjoyment of that property is sufficient."  (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 937.)  Private nuisance liability "depends on some sort of conduct" by the defendant "that either directly and unreasonably interferes with" the plaintiff's interest in the free use and enjoyment of their property "or creates a condition that does so."  (*Lussier v. San Lorenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 100.)

B.  *Standards of Review*

"To the extent resolution of the appeal turns on the trial court's factual findings, we review such findings under the substantial evidence standard."  (*Southern California Edison Co. v. Severns* (2019) 39 Cal.App.5th 815, 822.)  The trial court's determination that the Farsais had ceased to use the disputed property for the limited use described by the easement is a question of fact.  In addition, whether the Farsais harmed the Marcuses is also a question of fact.  Therefore, we review the trial court's decision to determine if it is supported by substantial evidence.

" ' "In a substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].  [Citations.]'  [Citation.]  We may not reweigh the evidence and are bound by the trial court's credibility determinations.  [Citations.]  Moreover, findings of fact are liberally construed to support the judgment." ' "  (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1102.)

We must also bear in mind the fundamental principle of appellate review "that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant

11

to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; see also Cal. Const., art. VI, § 13.)  As the appellant, the Farsais have the burden of demonstrating that the trial court committed reversible error. They must make this showing based on the record presented on appeal.  (*Jameson*, at p. 609; see also *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)  This task is rendered more difficult because the Farsais are proceeding without a reporter's transcript of the trial court proceedings.  The absence of a complete record of the trial court proceedings hampers the Farsais' ability to demonstrate error, because " '[i]n the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.' " (*Jameson*, at p. 609.)

> C.  *Exclusive Express Easements*; *Misuse*

The trial court found that the Farsais misused the easement and thereby forfeited it.[12]  The Farsais contend the trial court erred in this conclusion.

The language of an express easement determines the scope of the easement. (*Blackmore*, *supra*, 150 Cal.App.4th at p. 1599.)  "In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply.  If the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired." (*Scruby*, *supra*, 37 Cal.App.4th at p. 702.)  However, "[i]f the language is ambiguous, extrinsic evidence may be used as an aid to interpretation unless such evidence imparts a meaning to which the instrument creating the easement is not reasonably susceptible." (*Ibid*.)  "When there is any ambiguity or uncertainty about the scope of an easement grant, the surrounding

---

[12] The trial court also found the easement invalid as a violation of Cupertino zoning law.  We need not reach that issue in light of our conclusion that the trial court did not err in terminating the easement based on misuse.

circumstances, including the physical conditions and character of the servient tenement and the requirements of the grantee, play a significant role in the determination of the controlling intent." (*Id.* at p. 705.)

The 1983 Grant Deed does not explicitly state whether the easement is intended to be exclusive. We therefore examine surrounding circumstances to determine the controlling intent.

The back fence runs the full width of the Marcuses' backyard, along the eastern border of the easement. The side fence runs "along the entire depth of" the Carmen Property and along the northern border of the easement on the Quinterno Property. In its statement of decision, the trial court found that "Cowger maintained a fence around the entire easement without access to the owner of the" Quinterno Property.

Although, in their opening brief, the Farsais maintain that the Marcuses have access to the easement "from inside [the Marcuses'] property" through "a gate in the fence," the Farsais provide no record citation for this assertion.[13] The record does not contain evidence of a gate in either the back fence, the side fence, or the concrete wall that replaced the side fence. Photographs taken of the easement area do not show a gate or other access point in the back fence or the concrete wall abutting the easement area.

In the trial court, the Farsais claimed exclusive rights to the easement and indicated their desire to maintain it for their exclusive use. In documents filed with the trial court, the Farsais sought declaratory relief regarding "their rights to the exclusive use of" the easement and claimed in their trial brief that they have "an easement over and exclusive use of" the disputed property.

Substantial evidence in the record supports the trial court's finding that Cowger and the Farsais intended that they have exclusive use of the property described by the

---

[13] In their brief, the Marcuses assert the gate is on the Carmen Property and cannot be accessed without first entering the Carmen Property. The Marcuses provide no record citation for this assertion.

easement. Cowger and the Farsais maintained a fence around the entirety of the easement area without providing the Marcuses any access point, and the Farsais expressed their belief in filings before the trial court that they have exclusive rights to use the easement area. Nothing in the record supports a conclusion that the Marcuses ever used the land described by the easement or that they had direct physical access to it.

"Though an easement may be broadly exclusive, it is nonetheless necessarily limited in scope." (*Romero*, *supra*, __ Cal.5th __ [2024 WL 374870, at *7].) A servient tenement owner has the right to terminate an exclusive easement if the easement is used for a purpose other than that prescribed in the deed granting or reserving it. (*Id*. at *11].) The purpose of limiting the use of the easement to such "preexisting, limited uses" is to provide the servient tenement owner with "certainty that the easement area will never be used for any activity that might have a more intrusive impact on their property." (*Ibid*.) If an easement holder acts in a way that "results in a physical change of existing conditions to such an extent that the easement cannot be enjoyed without imposing a severe burden on the servient tenement," the easement should be terminated. (6 Miller & Starr, Cal. Real Estate, *supra*, § 15.77, p. 15-282.)

This conclusion reinforces the longstanding principles in easement law that the dominant tenement owner's use of an easement must "impose as slight a burden as possible on the servient tenement" (*Scruby*, *supra*, 37 Cal.App.4th at p. 702) and such easement holder may not modify the easement in such a manner that imposes an "unreasonable or unintended burden on the servient tenement." (*Thorstrom*, *supra*, 196 Cal.App.4th at p. 1422.)

Cowger reserved the easement for " 'YARD USE', including all normal and/or customary uses that would be associated with a residence backyard." From 1983 until she died in the early 2000s, Cowger "maintained the easement area with ivy, flowers and a grassy area." After the Farsais purchased the Carmen Property in 2004, their children and dog likewise used the easement as a yard by playing in the space. Usage of the

14

easement as a yard by successive owners thus " 'remained unchanged in [its] use and function since at least the initial property separation' " (*Romero*, *supra*, __ Cal.5th __ [2024 WL 374870, at *11]) until 30 years later, when the Farsais began building the concrete retaining wall and moving substantial amounts of dirt from their yard into the easement area.

In distinguishing easements from land ownership, our Supreme Court has emphasized that the owners of the servient estate are protected under the law of easements, "because they are provided certainty that the easement area will never be used for any activity that might have a more intrusive impact on their property." (*Romero*, *supra*, __ Cal.5th __ [2024 WL 374870, at *11].) Substantial evidence supports the trial court's conclusion that the Farsais engaged in such intrusive activity beyond the scope of the easement, justifying its termination.

The Farsais' construction of the concrete retaining wall and regrading of the easement slope significantly departed from the established, decades-long use of the easement as a yard. The Marcuses' expert witness, Fry, testified that, due to the way the Farsais constructed the retaining wall, the wall could prevent water from naturally running off from the easement into the street and could create a flooding hazard for the Quinterno Property. The Farsais' regrading of the easement further exacerbated this risk to the Quinterno Property. Fry also testified that the retaining wall's improper construction created a risk that the wall would overturn or creep down into and damage the Quinterno Property.

Further, the trial court found Carl Farsai "testified falsely under oath at his deposition" regarding whether the Farsais obtained a permit or formal plans for the concrete wall, concluding that the false testimony "was not an honest mistake or failure in recollection" considering the "great detail that Mr. Farsai offered at his deposition concerning facts that never occurred." The trial court noted that this testimony was important because it was relevant to the Farsais' position that Fry was incorrect in his

15

conclusion that the concrete wall was "improperly designed and created a dangerous condition." Since "[t]he fact finder's determination of the veracity of a witness is final," we defer to the trial court's decision that Carl Farsai's testimony was "not credible." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) Although, in their opening brief, the Farsais cite to testimony from their expert, Mohammad Rahmani, to refute Fry's testimony, the record does not include either Rahmani's deposition or trial testimony.

The record does not include a reporter's transcript of the trial, and we are limited to the facts as described and found by the trial court. We therefore reject a variety of factual claims pressed by the Farsais on appeal—for example, that the concrete wall was a fence rather than a retaining wall and that their regrading of the property was consistent with the prior use of the easement area. The trial court made factual findings to the contrary that rely on substantial evidence, and the Farsais have not provided a record that undermines the court's findings.

As the California Supreme Court recently held, "[w]hen an exclusive easement has been established, a dominant tenement owner may use the easement area only for a limited set of purposes, and the easement may be terminated if the dominant tenement owner ceases to use the area for those purposes." (*Romero*, *supra*, __ Cal.5th __ [2024 WL 374870, at *7].)[14] The trial court found that the Farsais used the easement for a purpose other than its prescribed and long-established use, and that their actions imposed an unreasonably severe, more intrusive burden on the Quinterno Property. We conclude

---

[14] In support of its contention that the trial court erred in terminating the easement, the Farsais rely on *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754 to argue that injunctive relief is favored in cases of misuse and extinguishment of an easement is only justified if the easement holder "had performed or authorized an act which permanently and materially interfered with [*the easement holder's*] continued use of the easement." (*Id.* at p. 768, italics added.) However, *Reichardt* involved a non-exclusive easement— which allowed the servient tenement owner continued use of the easement—rather than an exclusive easement. Its analysis, therefore, does not assist the Farsais.

16

substantial evidence in the record supports the trial court's finding of misuse of the easement. Based on these factual conclusions, the trial court did not err in terminating the easement.[15]

    D. *Trespass, Nuisance, and Related Damages*

        1. <u>Harm from Trespass and Nuisance</u>

The Farsais' argument that the trial court erred in concluding that they had committed trespass and nuisance against the Marcuses appears to be based solely on their claim that the Farsais' actions did not harm the Marcuses. However, the Farsais cite no legal authority to support their contention.

"Appellate briefs must provide argument and legal authority for the positions taken" (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862), and a party who claims the trial court erred may not "rest on the bare assertion of error but must present argument and legal authority on each point raised." (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649.) When an appellant asserts a point on appeal " 'but fails to support it with reasoned argument and citations to authority,' " this court may treat the point as forfeited. (*Nelson*, at p. 862.) The Farsais have forfeited their contention regarding the trespass and nuisance claims on appeal. Furthermore, we do not agree with the Farsais that the trial court erred on this point.

As discussed *ante* (pt. II.C.), the Farsais' conduct caused physical harm to the Quinterno Property. The trial court credited the Marcuses' expert's testimony "that the cement structure is improperly constructed and hazardous" and that "the concrete wall and the substantial regrading of the easement area has affected the natural drainage on the property and is harmful to the Marcuses' property."

---

[15] Because we have concluded the trial court did not err in terminating the easement, we do not reach the Farsais' challenge to the trial court's alternative finding that the easement is invalid on the grounds that the Farsais' exclusive use of the easement was tantamount to a fee.

17

Furthermore, according to the Marcuses' testimony cited in the trial court's statement of decision and as discussed in further detail *post*, the Farsais' construction and regrading activities were a "tremendous source of stress and concern" for the Marcuses. They believed that the changes to the easement area were an attempt by the Farsais to take possession of the Marcuses' property, and restricted their ability to sell the Quinterno Property at fair market value and, by extension, Sonja Marcus' financial ability to downsize to a smaller home. The trial court credited this evidence, and the record contains no basis for this court to reject its substantial character. The Farsais interfered with the Marcuses' interest in the use and enjoyment of the property. (*Capogeannis*, *supra*, 12 Cal.App.4th at p. 674.)

In sum, substantial evidence in the record supports the trial court's finding that the Marcuses proved both trespass and private nuisance. The Farsais have not met their burden on appeal of showing error.

### 2. Damages

The Farsais appear to misapprehend the basis for the trial court's award of noneconomic damages to the Marcuses. The Farsais claim that the award is "completely unfounded" because the Marcuses "did not have a cause of action of intentional or negligent infliction of emotional distress."

The awarded noneconomic damages stem from the trial court's finding that the Farsais committed trespass and private nuisance on the Marcuses' property, not from any claim of intentional infliction of emotional distress. " 'Once a cause of action for trespass or nuisance is established, an occupant of land may recover damages for annoyance and discomfort that would naturally ensue therefrom.' " (*Kornoff v. Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 272.) Such damages may include damages for "emotional distress or mental anguish" that are "proximately caused by the trespass or nuisance" (*Hensley v. San Diego Gas & Electric Co.* (2017) 7 Cal.App.5th 1337, 1349, italics omitted), and "discomfort growing out of the well grounded fear" that a harm may occur,

18

including harm that "depreciates the value of the property." (*Alonso v. Hills* (1950) 95 Cal.App.2d 778, 788 (*Alonso*).) Moreover, a trial court may award damages for discomfort and annoyance even when "the only injury is to the real property since it is obvious that such an injury may cause discomfort and annoyance without also causing an actual physical injury to the person." (*Kornoff*, at p. 275.)

The record contains substantial evidence supporting the trial court's findings that the Farsais' conduct harmed the Marcuses' property and caused the Marcuses to suffer severe anxiety and distress.

"The amount of the recovery for discomfort and annoyance is left to the sound judgment and discretion of the trier of facts without necessity of specific evidence as to such amount." (*Alonso*, *supra*, 95 Cal.App.2d at p. 788.) The Farsais have not persuaded us the trial court abused its discretion in selecting the amount.

## III. DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

19

_____
Danner, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P. J.



_____
Bromberg, J.




**H050753**
*Marcus et al. v. Farsai et al.*