Filed 8/26/25  Lipton v. Hazut CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| KENNETH M. LIPTON et al., | B332010 |
| Plaintiffs, Cross-defendants, and Appellants, | (Los Angeles County Super. Ct. No. 22VECV00954) |
| v. | |
| HAIM HAZUT et al., | |
| Defendants, Cross-complainants, and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Virginia Keeny, Judge.  Affirmed.

David R. Greifinger for Plaintiffs, Cross-defendants, and Appellants.

Lebedev, Michael & Helmi and Gennady L. Lebedev for Defendants, Cross-complainants, and Respondents.

————————————

Kenneth M. Lipton and the Kenneth M. Lipton Family Trust Dated August 28, 1991 (collectively, Lipton) appeal from the judgment entered in favor of Haim Hazut, May Y. Hazut, and the Haim and May Y. Hazut Revocable 2019 Trust (collectively, the Hazuts). Following a bench trial, the court found Lipton failed to establish a prescriptive easement over a narrow strip of land between Lipton's and the Hazuts' properties. Lipton concedes he failed to prove the elements of a proscriptive easement over the portion of the disputed area in the rear of his property adjacent to his backyard. But he contends the trial court erred in finding he had not established an easement over the disputed strip of his driveway that extended from the sidewalk to a gate leading to his backyard. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.   *The Parties and the Property at Issue*

The facts of this case are largely undisputed. Lipton and the Hazuts live next door to each other in the Sherman Oaks neighborhood of Los Angeles. Lipton purchased his house in 1984, and the Hazuts bought their house on the adjacent property to the south in 1999. Lipton's driveway extends from the sidewalk to the middle of the side of his house. At the end of Lipton's driveway is a gate to his backyard. Prior to 2023 a four-foot-high wooden fence extended along the south end of Lipton's property from Lipton's gate to the back of the property. The fence was in place before Lipton and the Hazuts moved into their homes, and the fence lay along what the parties believed was the correct boundary between their properties.

2

In April 2022 the Hazuts commissioned a survey of their property to prepare for installation of a new fence along the boundary with Lipton's property. The survey (copied below, with Lipton's property on the right and the Hazuts' property on the left) showed that Lipton's driveway and backyard fence encroached on the Hazuts' property. The encroachment was approximately 22 inches wide at the front of the property and narrowed to nine inches at the rear of the property, resulting in a total encroachment of approximately 88 square feet.[1] Upon learning their property line was farther north than they originally thought (on a strip of Lipton's driveway running from the sidewalk to the back of the properties), the Hazuts informed Lipton that they intended to tear down Lipton's fence and install a new fence on the correct property line, extending from the sidewalk (on Lipton's concrete driveway) to the rear of the Hazuts' property.

---

[1] The trial court referred to the entire strip of disputed land as being 22 inches long. This discrepancy does not affect our decision because the parties do not dispute the location of the correct boundary line as described in the survey. The survey is attached to the judgment and is included below.



NOTE:
THE BOUNDARY ESTABLISHMENT FOR THIS PROPERTY WILL BE FULLY DELINEATED ON A CORNER RECORD TO BE FILED WITH THE COUNTY OF LOS ANGELES IN CONJUNCTION WITH THIS PROJECT

LEGAL DESCRIPTION:
LOT 9 IN BLOCK E
TRACT NO. 6852
M.B. 76, PGS. 46-48
APN 2265-006-009

CONVERSION DATA:
ONE INCH = 0.083 FEET

N00°00'00"W 50.01'
WOOD BOARD FENCE NORTH FACE 0.31" NORTH OF PROPERTY LINE

N00°59'56"W 135.00'

TREE LINE LOCATED NORTH OF PROPERTY LINE

WOOD BOARD FENCE NORTH FACE ON PROPERTY LINE

0.74'

GARAGE

0.74'

0.76'

SHED

WOOD BOARD FENCE SOUTH OF PROPERTY LINE

ADJACENT 2 STORY BUILDING

4453 VESPER AVE
LOT 7, BLK E
TRACT NO. 6852
MB 76, PGS. 46-48

7.73'

0.82'
1.09'

ONE STORY BUILDING

N00°59'56"W 135.00'

7.78'

CONCRETE DRIVE WAY

FD L&T "LS 8930" ON PROPERTY CORNER

SET L&T "LS 8571" ON PROPERTY LINE PRODUCED 1.0' FROM CORNER

1.70'

N00°00'00"W 50.01'

LICENSED LAND SURVEYOR
ERIK GEORGE BOWERS
No. 8571
STATE OF CALIFORNIA

# VESPER AVENUE

# SURVEY EXHIBIT
# 4459 VESPER AVENUE

## JACK LITTLE COMPANY
### LICENSED LAND SURVEYORS
17620 SHERMAN WAY SUITE 218 VAN NUYS, CA 91406
PHONE: (818) 342-3277  FAX. (818) 344-5787

| DATE: | 6/21/22 |
|---|---|
| SCALE: | N.T.S |
| PROJ. | 52-072-22 |
| DRN.BY | ADG |
| SHEET NO. | 1 OF 1 |

B.   *The Complaint, Amended Complaint, and Cross-complaint*

On July 11, 2022 Lipton filed a complaint, which he later amended, seeking to quiet title to the disputed land and to establish an equitable easement or prescriptive easement. Lipton also alleged causes of action for nuisance, equitable relief, and declaratory relief. On August 18, 2022 the Hazuts filed a cross-complaint against Lipton seeking to quiet title to the disputed land and alleging causes of action for ejectment, nuisance, declaratory relief, and injunctive relief.

In January 2023, while the action was pending, the Hazuts tore down the fence that separated the back portions of the properties and installed a new six-foot fence along the correct boundary line, with posts supporting the fence placed in holes drilled in Lipton's driveway. The new fence extended from the sidewalk to the back of the Hazuts' property.

C.   *Evidence at Trial*

The trial court held a two-day bench trial in May 2023. Lipton testified he did not know his fence and driveway encroached on the Hazuts' property until the survey was completed in 2022. Lipton used his driveway to store two cars: a classic car covered by a tarp that had been stored on the driveway for 20 years and a 2007 Honda Accord that had not been driven for more than five years. Lipton used the Honda to store documents and legal files.

Lipton testified the placement of the new fence—20 inches into Lipton's driveway[2]—made it impossible for him to open the front driver's side door of the Honda more than a few inches. In

---

[2]   The poles for the new fence were installed on the Hazuts' property, two inches south of the boundary line.

5

addition, because there was no room to walk on the driveway between the Honda and the fence, Lipton's gardener and pool repair person could not walk to the backyard on that side of the driveway. Lipton was also unable to move his trash cans from the backyard to the street on the side of the driveway next to the fence. Instead of storing the trash cans in the backyard as he used to do, he had to leave them on the lawn or at the end of the driveway next to the sidewalk. Lipton stated that storing the trash cans between the two cars was not possible because it would necessitate lifting the trash cans over a large tree root and would damage the sprinkler heads.

Haim Hazut testified he did not know Lipton's fence and driveway encroached on his property until the survey was completed. The Hazuts wanted to build a security fence because of an increase in crime in the neighborhood. Further, Hazut needed to use the disputed land for placement of the fence to comply with the city's requirement that there be a six-foot setback from his house. Hazut disputed Lipton's statement that Lipton could not use his driveway with the new fence in place. Hazut noted Lipton had not driven either of his cars for years, and Lipton therefore did not need to have access to the driver's side doors. Hazut also asserted Lipton could traverse the south side of the driveway if he extended the concrete a few inches toward his front lawn or removed the large tree halfway down the driveway to make the space more passable.

The court admitted the survey and multiple photographs of the disputed property, taken both before and after installation of the new fence, which showed Lipton's driveway, the two cars on the driveway, and the old and new fences.

6

D.    *The Trial Court's Decision*

The trial court issued an eight-page tentative statement of decision on June 7, 2023, which the court later adopted as its final decision.  (See Cal. Rules of Court, rule 3.1590(c)(1) & (g).)  The court found Lipton had failed to establish a prescriptive easement because he sought "sole use of the disputed area," which would require proof of the elements of adverse possession, including payment of taxes on the disputed area.  The court also rejected Lipton's claim to an equitable easement.

On July 26, 2023 the trial court entered judgment in favor of the Hazuts.  Lipton timely appealed.

## DISCUSSION

A.    *Standard of Review*

"'In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo, and we review the trial court's findings of fact for substantial evidence.'"  (*State of California ex rel. Rapier v. Encino Hospital Medical Center* (2022) 87 Cal.App.5th 811, 828; accord, *Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162.)

In reviewing a judgment for substantial evidence, we "'"consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].'""  (*Kao v. Joy Holiday* (2020) 58 Cal.App.5th 199, 206.)  "We may not reweigh the evidence and are bound by the trial court's credibility determinations."  (*Estate of Young* (2008) 160 Cal.App.4th 62, 76; accord, *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94.)  "Substantial evidence is evidence that is

7

'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and '"substantial" proof of the essentials which the law requires in a particular case.'" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006; accord, *Sacramento Municipal Utility Dist. v. Kwan* (2024) 101 Cal.App.5th 808, 813.) ""'The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record.""'" (*McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243, 257; accord, *Estate of Young*, at p. 76.)

B.     *Prescriptive Easements*

   "'"Interests in land can take several forms, including "estates" and "easements."' [Citation.] 'An estate is an ownership interest in land that is, or may become, possessory.' [Citation.] 'An easement,' by contrast, 'gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be *less* than the right of ownership.'" (*Romero v. Shih* (2024) 15 Cal.5th 680, 692 (*Romero*).) Common examples of easements "include a right-of-way over another's land or the right to pasture on another's land." (*Hansen v. Sandridge Partners, L.P.* (2018) 22 Cal.App.5th 1020, 1032 (*Hansen*).)

   An easement can be created in several ways, including, as relevant here, "by prescription, through the continuous, hostile, and adverse use of the property." (*Romero*, *supra*, 15 Cal.5th at p. 692.) "'To establish the elements of a prescriptive easement, the claimant must prove use of the property, for the statutory period of five years, which use has been (1) open and notorious; (2) continuous and uninterrupted; (3) hostile to the true owner; and (4) under claim of right.'" (*Hansen*, *supra*, 22 Cal.App.5th at p. 1032.) As noted, a successful prescriptive easement claimant

8

does not acquire an ownership interest in the land, but "merely obtains the right to *use* the land in a particular way (i.e., an easement)." (*Id.* at p. 1033; accord, *Silacci v. Abramson* (1996) 45 Cal.App.4th 558, 564 (*Silacci*) [an easement "is merely the right to use the land of another for a specific purpose—most often, the right to cross the land of another"].)

Even where the elements of a prescriptive easement have been proven, an easement generally cannot be granted where it would provide the claimant exclusive use of the easement area. "An exclusive prescriptive easement is . . . a very unusual interest in land. The notion of an exclusive prescriptive easement, which as a practical matter completely prohibits the true owner from using his land, has no application to a simple backyard dispute like this one." (*Silacci*, *supra*, 45 Cal.App.4th at p. 564; accord, *Hansen*, *supra*, 22 Cal.App.5th at p. 1034 [prospective easement cannot "prevent[ ] the servient tenement landowner from using the land for *any* 'practical purpose'"]; *Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1093 ["an exclusive prescriptive easement . . . will not be granted in a case (like this) involving a garden-variety residential boundary encroachment"].)[3]

---

[3] As the Supreme Court recently observed in *Romero*, *supra*, 15 Cal.5th at page 697, footnote 2, "The appellate case law is not uniform in forbidding broadly exclusive prescriptive easements." However, the *Romero* court (which did not decide the validity of an exclusive prescriptive easement) cited only *Otay Water Dist. v. Beckwith* (1991) 1 Cal.App.4th 1041 as an example of a case in which the appellate court granted an exclusive prescriptive easement. In *Otay*, the Court of Appeal granted a prescriptive easement to a water district to use disputed land as a reservoir. (*Id.* at p. 1048.) The *Otay* court acknowledged that a prescriptive

9

Accordingly, "[i]f the prescriptive interest sought by a claimant is so comprehensive as to supply the equivalent of an estate, the claimant must establish the elements of adverse possession, not those of a prescriptive easement." (*Hansen*, *supra*, 22 Cal.App.5th at p. 1033.)  There is a "high degree of similarity between the elements of a prescriptive easement and the elements of adverse possession. . . .  Crucially, however, adverse possession requires claimants to prove that they have paid taxes assessed against the property in order to claim title. [Citations.]  The creation of easements by prescription does not." (*Romero*, *supra*, 15 Cal.5th at pp. 696-697.)

---

easement could not be granted "where an easement would create the practical equivalent of an estate," but the court reasoned the requested easement was not equivalent to an estate because the claimant could use the disputed property only for the limited historical use as a reservoir.  (*Ibid.*)  The court also acknowledged the necessity to provide exclusive use of the property for a reservoir to prevent potential contamination of the water supply. (*Ibid.*)  The majority of the Courts of Appeal that have addressed the issue have declined to follow *Otay*.  (See, e.g., *Hansen*, *supra*, 22 Cal.App.5th at p. 1035 ["We decline to follow *Otay*. . . .  [T]he 'easement' in *Otay* was the practical equivalent of an estate."]; *Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1307 ["*Otay Water District* must be limited to its facts [where there was a] public health or safety basis for granting an exclusive easement"].)  Lipton does not argue we should follow *Otay*, nor does he dispute that an exclusive prescriptive easement is generally improper.

C.	*Substantial Evidence Supports the Trial Court's Finding Lipton Did Not Establish a Prescriptive Easement*[4]

As discussed, the trial court found Lipton sought exclusive use of the easement area.[5]  Lipton does not dispute this finding of exclusive use as to the back portion of the property where the old fence was located or challenge the court's denial of a prospective easement to that area.  As to the driveway, Lipton argues the court erred in finding he sought exclusive use.  He argues the land was "equally accessible" to both parties and the Hazuts "would be able to drive or walk on the disputed land as much as [he] would."

Substantial evidence supports the trial court's finding that Lipton sought exclusive use of the driveway portion of the easement.  It is undisputed that Lipton sought the right to park his inoperable cars on the driveway at all times and to open the driver's side door of the car closest to the street (the Honda).  He also argued he had the right to use the easement to store and/or transport his trash cans to the street.  If the easement were granted (and the security fence removed), we agree the Hazuts would have the ability to walk on the disputed strip of driveway, as long as Lipton's trash cans were not stored there.  However,

---

[4]	On appeal, Lipton does not challenge the trial court's denial of an equitable easement.

[5]	The trial court did not make explicit findings as to whether Lipton established the elements of a prescriptive easement, instead focusing on the exclusive nature of the easement Lipton sought, which barred any relief.  Because substantial evidence supported the court's findings regarding exclusive use, we do not reach whether Lipton established the elements of a prescriptive easement.

11

the Hazuts could make no other practical use of the area. They could not use the disputed area to park their car or store trash cans there, nor could they install landscaping or planters—all of which would interfere with Lipton's ability to open the car door and to transport his trash cans. And the Hazuts could not do the one thing they want to do—use the disputed area to install a security fence around their house in the only place that would meet the six-foot setback requirement under the applicable building codes. Thus, the use of the land Lipton sought would deny the Hazuts "virtually all use of their property."[6] (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1300.)

On these facts, the trial court's finding that the use sought by Lipton was exclusive is supported by substantial evidence. (See *Hansen*, *supra*, 22 Cal.App.5th 1020, 1034 [prescriptive easement was improper where claimant planted trees on disputed land in such a manner that the landowner "would not be able to use the Disputed Land for any 'practical purpose'"]; *Harrison v. Welch*, *supra*, 116 Cal.App.4th at p. 1094 [rejecting claimant's argument easement was not exclusive because it had no "'physical' or 'practical'" barriers and explaining that while landowners were "'not physically excluded from those portions of the encroachment area, . . . such facts do not make the encroaching use any less exclusive. . . . [T]he landscaping scheme of [claimant] has essentially co-opted the encroachment area to

---

[6] Not only would Lipton's proposed use of the easement deny the Hazuts their desired use of their property, but as the trial court found, losing 20 to 22 inches of his driveway would not impose a significant hardship on Lipton, who could move his Honda 12-18 inches to the north on the driveway (toward his home).

an exclusive use"]; *Raab v. Casper* (1975) 51 Cal.App.3d 866, 877 (*Raab*) [reversing trial court's grant of prescriptive easement where claimant's use of disputed land as driveway and yard was "the practical equivalent of an estate"; claimants "doubtless did not intend [landowners] to picnic, camp or dig a well in [the] yard"].)

Because the use Lipton sought was exclusive for all practical purposes, the trial court properly characterized Lipton's request as a claim for adverse possession and required proof that Lipton paid the property taxes for the disputed area. (*Hansen, supra*¸ 22 Cal.App.5th at p. 1033.) Lipton presented no evidence in the trial court that he paid taxes on the property. Accordingly, the court's findings Lipton failed to establish either a prescriptive easement or adverse possession are supported by substantial evidence.

D.      *Remand Is Not an Appropriate Remedy*

Lipton argues that, if we find he failed to establish a prescriptive easement, we "should remand for a hearing on the theory of adverse possession." In support of this assertion Lipton relies on *Silacci, supra*, 45 Cal.App.4th at page 564, in which the court remanded for a new trial on adverse possession, stating, "Because the case was tried on a theory of prescriptive easement, the issue of payment of taxes on the disputed parcel never came up." (See *Raab, supra*, 51 Cal.App.3d at p. 878 [remanding for retrial regarding payment of taxes to establish adverse possession].)

It is not clear from either *Silacci* or *Raab* why the courts determined remand was necessary or appropriate under the circumstances presented there. Indeed, remand in those cases appears to contravene the principle that "'[w]hen the plaintiff has

13

had full and fair opportunity to present the case, and the evidence is insufficient as a matter of law to support plaintiff's cause of action, a judgment for defendant is required and no new trial is ordinarily allowed, save for newly discovered evidence.'" (*Kaushansky v. Stonecroft Attorneys, APC* (2025) 109 Cal.App.5th 788, 804; accord, *Farmers & Merchants Trust Co. v. Vanetik* (2019) 33 Cal.App.5th 638, 650 [denying new trial where party had "full and fair opportunity to make the requisite showing and failed to do so"]; *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 153-154 [same].) The same is true when a party on appeal requests remand to present evidence on a theory not raised in the trial court. (See *Estate of Westerman* (1968) 68 Cal.2d 267, 279 [rejecting appellant's request for remand to present additional evidence where "no reason appears why we should not apply the established rules that a party to an action may not, for the first time on appeal, change the theory of the cause of action [citations] and that issues not raised in the trial court cannot be raised for the first time on appeal"].) Lipton did not argue in the trial court that the court should grant him relief based on a theory of adverse possession, nor has he provided any argument why we should allow him a second bite at the apple here.[7]

---

[7] We also note the Hazuts in their answer to the amended complaint raised as affirmative defenses Lipton's failure to establish a right to adverse possession and Lipton's failure to pay taxes. Lipton made the strategic decision not to raise adverse possession at trial, leaving no basis for us to remand for a new trial on that theory, nor has he made any offer of proof that he could present evidence of payment of taxes at a new trial on remand.

## DISPOSITION

The judgment is affirmed. The Hazuts are to recover their costs on appeal.

FEUER, J.

We concur:


MARTINEZ, P. J.


STONE, J.